Eric E. Rothstein
Attorney for Benjamin Plaza, Jr., Creditor
Rothstein Law PLLC
The Woolworth Building
233 Broadway, Suite 900
New York, New York 10279
(212) 577-9797

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>  MICHAEL HEILBRON,<br><br>                                        Debtor. | Chapter 7<br>Case No.     1-18-42486 (ESS)<br><br>**MEMORANDUM OF LAW** |
| BENJAMIN PLAZA, JR.,<br>Chapter 7 Creditor<br><br>                                        Plaintiff.<br><br>v.<br><br>MICHAEL HEILBRON,<br><br>                                        Defendant. | Adv. Proc. No.   1-18-01055 (ESS) |

   BENJAMIN PLAZA, JR,, movant, by and through his counsel, Eric E. Rothstein, respectfully submits this motion requesting that this Court find that Creditor/Plaintiff's claim is non-dischargeable and granting creditor/plaintiff's motion in its entirety.

Statement of Facts:

   1.  Debtor punched plaintiff in the chin causing him to suffer a fractured mandible (jaw) requiring open reduction and internal fixation.

   2.  Plaintiff-Creditor further relies upon the facts and procedural history stated in his Local Rule 7056.1 Statement of Material Facts.

1

Summary of Argument:

3. Debtor is estopped for three separate reasons from discharging his debt to plaintiff: a) Debtor plead guilty to Assault in the Third Degree (PL § 120.00) in Queens Criminal Court; b) debtor defaulted in plaintiff's subsequent civil lawsuit by failing to serve an Answer and the Judge held an Inquest and entered a judgment; and c) debtor subsequently filed a motion to vacate the default judgment and attempted raise a justification defense. However, the Judge held that debtor failed to show a meritorious defense.

Argument:

**A.** **Standard of Review on a Summary Judgment Motion**.

4. On a motion for summary judgment, a court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In a bankruptcy court, Fed. R. Civ. P. 56(a) is made applicable by Fed. R. Bankr. P. 7056. A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists and that the undisputed facts establish the movant's right to judgment as a matter of law. To prove non-dischargeablity under 11 U.S.C. § 523(a)(6), the plaintiff must prove that the debt is non-dischargeable by a preponderance of the evidence.

**B.** **Plaza's Claim Is Non-Dischargeable Under 11 U.S.C. § 523(a)(6).**

5. Under 11 U.S.C. § 523(a)(6), a debt is non-dischargeable if it is the result of a "willful and malicious injury by the debtor to another entity." 11 U.S.C. § 523(a)(6). The term "entity" includes a person. 11 U.S.C. § 101(15).

6. In order to prove that the debtor acted willfully under § 523(a)(6), a plaintiff must demonstrate that the debtor deliberately intended to cause injury, not just that the defendant committed an intentional act that unintentionally inflicted injury. *Kawaauhau v. Geiger*, 523 U.S.

57, 61, 118 S. Ct. 974, 140 L. Ed. 2d 90 (1998).

7. Intent is defined — for the purposes of 11 U.S.C.S. § 523(a)(6) — as either a deliberate intent to cause the injury, or a substantial certainty that the injury will occur. Courts in the Second Circuit generally apply a subjective standard of intent. *Margulies v. Hough (In re Margulies)*, 517 B.R. 441, 453 (S.D.N.Y. 2014) (surveying cases and discussing the circuit split between the Sixth, Eighth, Ninth and Tenth Circuits, which apply a subjective standard and the Fifth Circuit, which applies an objective standard).

8. "Willful," as used in § 523(a)(6), means a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury, and includes conduct that the actor is substantially certain will cause injury.

9. *Geiger* did not define "malicious." *See Stahl v. Gross* (*In re Gross*), 288 B.R. 655, 662 (Bankr. E.D.N.Y. 2003); *Chaffee v. Chaffee* (*In re Chaffee*), 2009 Bankr. LEXIS 2644, *17 (Bankr. N.D.N.Y. 2009).

10. To show that the debtor acted maliciously, a plaintiff must prove that the debtor acted wrongfully and "without just cause or excuse, even in the absence of personal hatred, spite or ill will." *Navistar Fin. Corp. v. Stelluti* (*In re Stelluti*), 94 F.3d 84, 87-88 (2d Cir. 1996).

11. Malice may be implied. Malice is implied when "anyone of reasonable intelligence knows that the act in question is contrary to commonly accepted duties in the ordinary relationships among people, and injurious to another." *Navistar Fin. Corp. v. Stelluti* (*In re Stelluti*), 167 B.R. 29, 33 (Bankr. S.D.N.Y. 1994), aff'd, 94 F.3d 84 (2d Cir. 1996).

12. Certain intentional torts, such as assault, are inherently malicious. "Certain types of conduct, such as assault, may be inherently and patently malicious. Actual malice may be an essential element of some causes of action, such as malicious prosecution. In other claims, actual malice may be inferred or imputed, for example, from the fact that the debtor's conduct giving

rise to liability has no potential for economic gain or other benefit to the debtor, from which one could only conclude that the debtor's motivation must have been to inflict harm upon the creditor. In all of these cases, the element of actual malice may be easily deduced from the facts." *Novartis Corp. v. Luppino* (*In re Luppino*), 221 B.R. 693, 700, 1998 Bankr. LEXIS 702, *17 (Bankr. S.D.N.Y. 1998).

13. As for the element of malice, an act is malicious when "wrongful and without just cause or excuse, even in the absence of personal hatred, spite, or ill-will." *Ball v. A.O. Smith Corp.*, 451 F.3d 66, 69 (2d Cir. 2006) (quoting *Navistar Financial Corp. v. Stelluti (In re Stelluti)*, 94 F.3d 84, 87 (2d Cir. 1996)). A finding of malice does not require a "specific intent to harm or injure," but rather "is implied when anyone of reasonable intelligence knows that the act in question is contrary to commonly accepted duties in the ordinary relationships among people, and injurious to another." *Aldus Green Co. v. Mitchell (In re Mitchell)*, 227 B.R. 45, 51 (Bankr. S.D.N.Y. 1998) (citations and quotations omitted); *In re Stelluti*, 94 F.3d at 87 (Implied malice may be found as "demonstrated by the acts and conduct of the debtor in the context of [the] surrounding circumstances.") (quoting *First National Bank of Maryland v. Stanley* (In re Stanley), 66 F.3d 664, 668 (4th Cir. 1995)).

14. Courts do not labor over the malice requirement under § 523(a)(6), especially when the willfulness requirement has been met. *Reed v. Owens* (*In re Owens*), 449 B.R. 239, 258, 2011 Bankr. LEXIS 973, *48 (Bankr. E.D. Va. 2011). *Reed* dealt with a debtor who repeatedly kicked the creditor while the creditor remained on the ground. *Id.* The Court held that the debt was non-dischargeable. *Id.*

15. "In *Geiger*, the Supreme Court considered whether, in the context of § 523(a)(6), "willfulness" encompassed "acts, done intentionally, that cause injury..., or only acts done with the actual intent to cause injury." 523 U.S. at 61. Citing the Restatement (Second) of Torts (1964)

(the "Restatement"), the Court held that § 523(a)(6) encompassed "'intentional torts,' as distinguished from negligent or reckless torts. Intentional torts generally require that the actor intend 'the consequences of an act,' not simply 'the act itself.'" *Id.* at 61-62 (emphasis in *Geiger*) (quoting Restatement § 8A, cmt. a). The section of the Restatement cited favorably in *Geiger* provides further that intent is found when "the actor desires to cause consequences of his act, or that he believes that the consequences are substantially certain to result from it." Restatement § 8A, cmt. a. Comment b continues, If the actor knows that the consequences are certain, or substantially certain, to result from his act, and still goes ahead, he is treated by the law as if he had in fact desired to produce the result. As the probability that the consequences will follow decreases, and becomes less than substantial certainty, the actor's conduct loses the character of intent, and becomes mere recklessness.... As the probability decreases further, and amounts only to a risk that the result will follow, it becomes ordinary negligence.... All three have their important place in the law of torts, but the liability attached to them will differ. *Id.*, cmt. b. Although *Geiger* did not specifically incorporate the Restatement's "substantial certainty" test, courts that have considered this issue post-*Geiger* have relied upon *Geiger*'s favorable reference to that section of the Restatement in defining intent — for the purposes of § 523(a)(6) — as either a deliberate intent to cause the injury, or a substantial certainty that the injury will occur." *Margulies v. Hough* (*In re Margulies*), 517 B.R. 441, 452, 2014 U.S. Dist. LEXIS 125843, *20-22 (S.D.N.Y. 2014).

16.    It is axiomatic that it is substantially certain that punching someone in his jaw will break the jaw.

### C. Collateral Estoppel of Non-Dischargeability Under 523(a)(6) Due to Guilty Plea Under PL § 120.00.

17.    The preclusive effect of a state court determination in a subsequent federal action is governed by the rules of the state where the prior action occurred. *New York v. Sokol* (*In re*

*Sokol*), 113 F.3d 303, 306 (2d Cir. 1997) (citing 28 U.S.C. 1738).

18. In New York, collateral estoppel prevents a party from relitigating an issue that was decided in an earlier proceeding where the party against whom preclusion is to be applied had a full and fair opportunity to litigate the issue. *See Kaufman v. Eli Lilly & Co.*, 65 N.Y.2d 449, 456 (1985). The party invoking collateral estoppel bears the burden of establishing the identity of the issues in the current action and the previous action, but the party opposing collateral estoppel bears the burden of establishing that is was not afforded a full and fair opportunity to litigate the issue previously. *Id.* "Collateral estoppel is a doctrine based on general notions of fairness involving a practical inquiry into the realities of the litigation; it should never be rigidly or mechanically applied." *Halyalkar v. Board of Regents of State of N.Y.*, 72 N.Y.2d 261 (1988).

19. "Bankruptcy proceedings may not be used to re-litigate issues already resolved in a court of competent jurisdiction," and the doctrine of *res judicata acts* to bar the relitigation of claims that have been resolved by final judgements. *Kelleran v. Andrijevic*, 825 F.2d 692, 695 (2d Cir. 1987). The broader doctrine of *res judicata* includes two distinct groupings of preclusive effects—"issue preclusion" and "claim preclusion." Courts have used various descriptions for these sub-doctrines, but the Supreme Court has clarified the modern trend in nomenclature: "Claim preclusion describes the rules formerly known as "merger and "bar," while issue preclusion encompasses the doctrines once known as "collateral estoppel" and "direct estoppel." *Taylor v. Sturgell*, 553 U.S. 880, 906, 128 S. Ct. 2161, 171 L. Ed. 2d 155 (2008) (citing *Migra v. Warren City School Dist. Bd. of Ed.*, 465 U.S. 75, 77, n. 1, 104 S. Ct. 892, 79 L. Ed. 2d 56, (1984)). While *Taylor* involved the application of federal common law, this opinion uses the modern term of "issue preclusion" in place of "collateral estoppel."

20. When another court's judgment is involved, bankruptcy courts fully retain the jurisdiction to determine the dischargeability of any resulting debt, including the presentation of

new issues or evidence "that is relevant to the nondischargeability action, but that was not relevant to the prior claim or action." *VW Credit, Inc. v Salim (In re Salim)*, No. 13-42974-ESS, 2015 Bankr. LEXIS 815, 2015 WL 1240000, at *9 (Bankr. E.D.N.Y. Mar. 16, 2015) (citing *Brown v. Felsen*, 442 U.S. 127, 133, 99 S. Ct. 2205, 60 L. Ed. 2d 767, (1979)). However, when the prior action did encompass issues and evidence relevant to dischargeability, bankruptcy courts will give proper effect to the prior judgment.

21.     A dischargeability proceeding in bankruptcy following a related state court judgment involves the application of issue preclusion. *In re Granoff*, No. 05-33028, 2006 Bankr. LEXIS 1465, 2006 WL 1997408, at *6 (Bankr. E.D. Pa. June 6, 2006), *aff'd sub nom. Granoff v. Bibus,* No. 05-33028, 2006 U.S. Dist. LEXIS 63858, 2006 WL 2583589 (E.D. Pa. Sept. 6, 2006), *aff'd sub nom. In re Granoff*, 250 F. App'x 494 (3d Cir. 2007) ("Although res judicata (i.e., claim preclusion) stemming from pre-bankruptcy state court litigation does not apply to non-dischargeability issues ... collateral estoppel (i.e., issue preclusion) may apply."). Issue preclusion acts to further judicial economy and prevent inconsistent decisions by barring "successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context [**9] of a different claim." *Taylor v. Sturgell*, 553 U.S. at 892 (quotation *omitted); Grogan v. Garner*, 498 U.S. 279, 284, 111 S. Ct. 654, 112 L. Ed. 2d 755 (1991) ("If the preponderance standard also governs the question of nondischargeability, a bankruptcy court could properly give collateral estoppel effect to those elements of the claim that are identical to the elements required for discharge and which were actually litigated and determined in the prior action."). The law of a state governs "[t]he preclusive effect of a state court determination in a subsequent federal action." *State of New York v. Sokol (In re Sokol)*, 113 F.3d 303, 306 (2d Cir.1997) (citing 28 U.S.C. § 1738). "Under New York law, collateral estoppel bars relitigation of an issue when (1)

the identical issue necessarily was decided in the prior action and is decisive of the present action, and (2) the party to be precluded from relitigating the issue had a full and fair opportunity to litigate the issue in the prior action." *Evans v. Ottimo*, 469 F.3d 278, 281 (2d Cir. 2006).

22. The collateral estoppel effect of a debtor's guilty plea in a criminal proceeding is governed by state law. *Kelleran v. Andrijevic*, 825 F.2d 692, 694 (2d Cir. 1987). New York gives collateral estoppel effect to criminal guilty pleas in subsequent civil proceedings addressing the same incident. *See Olsson v. MacDonald*, 16 A.D.3d 1017 (App. Div. 2005). A party in a civil action may be collaterally estopped from challenging liability when that party has pleaded guilty to criminal charges addressed to the same incident. *Id.*

23. For collateral estoppel, there must be an identity between the particular matter in the second action and that presented in the first. *D'Arata v. New York Cent. Mut. Fire Ins. Co.*, 76 N.Y.2d 659 (1990). It must be shown that this identical issue was necessarily decided in the first proceeding and is conclusive in the subsequent action. *Id.* In *D'Arata*, the Court of Appeals of New York found that the Penal Law 120.10(1), requiring that the defendant caused injury to plaintiff with "intent to cause serious physical injury to another person," held that the two requirement were satisfied. *Id.*

24. There is a further requirement that the issue be actually litigated in the first proceeding. *Id.* To satisfy this, the issue must have been properly raised by the pleadings or otherwise placed in issue and actually determined in the prior proceeding. *Id.* The Court in *D'Arata* found that collateral estoppel applied.

25. Here, while the plea allocution and the Certificate of Disposition state only that debtor plead guilty to PL § 120.00 (exhibit B), the record makes plain that he is estopped from denying intentional conduct.

26. First, the District Attorney charged debtor with only intentional conduct. Exhibit

8

A.

27. Second, in reducing the charges from intentional felonies to a misdemeanor, the prosecutor did not move to add a reckless count. Exhibit B at 2.

28. Third, debtor admitted during his allocution that he "knowingly assaulted another person and caused injury to that person." *Id* at 2.

29. Penal Law § 15.05(2) defines knowingly as:

> A person acts knowingly with respect to conduct or to a circumstance described by a statute defining an offense when he is aware that his conduct is of such nature or that such circumstance exists.

30. This gives the Court a second basis to hold that debtor is estopped from re-litigating the assault and find that his debt to plaintiff is not dischargeable.

**D.    The collateral estoppel effect of debtor's default in the civil action.**

31. "The law is well settled that a state court judgment must be given preclusive effect, at least for collateral estoppel purposes, in a subsequent federal court proceeding if the state in which the judgment was rendered would do so." *Wharton v. Shiver (In re Shiver)*, 396 B.R. 110, 117 (Bankr. S.D.N.Y. 2008). In *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380, 105 S. Ct. 1327, 84 L. Ed. 2d 274 (1985), the Supreme Court stated:

> [28 U.S.C. § 1738] directs a federal court to refer to the preclusion law of the State in which judgment was rendered. It has long been established that § 1738 does not allow federal courts to employ their own rules of res judicata in determining the effect of state judgments. Rather, it goes beyond the common law and commands a federal court to accept the rules chosen by the State from which the judgment is taken. Section 1738 embodies concerns of comity and federalism that allow the States to determine, subject to the requirements of the statute and the Due Process Clause, the preclusive effect of judgments in their own courts.

32. The Court in *Shiver* held that collateral estoppel can apply in a denial of discharge adversary proceeding specifically where the state court judgment entered was a default

9

judgment. 396 B.R. at 119 ("[T]here is no logical reason why different rules apply to default judgments. Controlling case law from the Second Circuit . . . makes this point abundantly clear. Three Second Circuit cases hold that state law controls issue preclusion in bankruptcy cases whether the state court judgment arose from a fully litigated case or from a default judgment.") (citing *Kelleran v. Andrijevic*, 825 F.2d 692, 694 (2d Cir. 1987); [*598] *Giaimo v. DeTrano (In re DeTrano)*, 326 F.3d 319, 322 (2d Cir. 2003); *Evans v. Ottimo*, 469 F.3d 278, 281 (2d Cir. 2006)). Therefore, it is necessary to look to New York State law and its collateral estoppel rules to determine whether a default judgment would be given preclusive effect.

33.     In New York, collateral estoppel prevents a party from re-litigating an issue where (1) the identical issue was decided in the prior action and is decisive of the present action, and (2) the party had a full and fair opportunity to contest the prior determination. *See Kaufman v. Eli Lilly & Co.*, 65 N.Y.2d 449, 455, 482 N.E.2d 63, 492 N.Y.S.2d 584 (1985).

34.     In *Rokina Opt. Co. v. Camera King*, 63 N.Y.2d 728, 729, 469 N.E.2d 518, 480 N.Y.S.2d 197 (1984), after the defendant answered the complaint, but subsequently failed to answer a set of interrogatories, the plaintiff sought an order striking the defendant's answer, and a default judgment was granted in favor of the plaintiff. A trial was then held solely on the issue of amount of damages, whereby the defendant was limited in the evidence to be taken at the trial establishing the reasonable value of damages. *Id* at 729-30. On appeal, the issue was whether preclusive effect could be given to the state court default judgment that, in effect, limited the rights of the defendant to establish, or defend against, the amount of damages. *Id.* The New York Court of Appeals held preclusive effect applied, but that "unless the damages sought in an action are for a sum certain or for a sum which can by computation be made certain, judgment against a defaulting party may be entered only upon application to the court along with notice to the defaulting party and a full opportunity to cross-examine witnesses, give testimony and offer

proof in mitigation of damages." *Id.*(citations omitted).

35. In other words, a defendant subject to a default judgment "admits all traversable allegations in the complaint, including the basic allegation of liability, but does not admit the plaintiff's conclusion as to damages." *Id.* (citation omitted); *see also In re Amanat*, 321 B.R. 30, 37 (Bankr. S.D.N.Y. 2005) (citing *Rokina* and noting that New York law permits a party to enforce un-stayed default judgments, subject to an inquest on damages). However, where an inquest on damages occurred in the state court, pursuant to New York law, such judgment is valid and enforceable — including the determination of damages — and is subject to preclusive effect in this Court. *See Amanat*, 321 B.R. at 37 ("[T]he State Court entered an order on liability and a judgment after an inquest on damages (at which [defendant] was represented). Thus, pursuant to New York law, [plaintiff's] judgment is valid and enforceable.").

36. In *Evans*, the Second Circuit likewise held that a judgment obtained by a creditor in New York State court, grounded in fraud and imposing punitive damages, precluded re-litigation in bankruptcy court and concluded that New York courts give collateral estoppel effect to default judgments. 469 F.3d at 282-83.

37. Further, even after defaulting, debtor filed and lost a contested motion to vacate his default and the Court held he failed to demonstrate a meritorious defense.

38. Here, plaintiff sued debtor in Queens Supreme Court, Civil Term, for intentional assault. Exhibit D. Notably, New York's civil law does not recognize anything other than an intentional assault. *Babikian v. Nikki Midtown, LLC*, 60 A.D.3d 470, 471 (1st Dept. 2009) ("We modify to dismiss the second and fourth causes of action for "negligent assault" and "negligent battery" as no such causes of action exist under New York law.")

39. Debtor did not Answer the Complaint and the Court granted plaintiff a default judgment. Exhibit E. Thereafter, the Court held an Inquest on damages and entered a judgment

against debtor for $128,739.96. Exhibit F.

40. When debtor defaulted in answering the civil complaint he "… admitted all traversable allegations in the complaint, including the basic allegation of liability." *Kim v S&M Caterers, Inc*., 136 A.D.3d 755 (2d Dept. 2016).

41. Thus, by defaulting, debtor admitted that he intentionally assaulted plaintiff.

42. Plaintiff's medical records show that he suffered a fractured mandible and underwent open reduction and internal fixation. Exhibit C.

43. Therefore, the Court should hold that debtor is estopped from re-litigating the assault and find that his debt to plaintiff is not dischargeable.

**D.  The collateral estoppel effect of debtor's failed motion to vacate his default in the civil action.**

44. Debtor later filed a motion to vacate his default in the civil court case. Exhibit G.

45. As part of that motion, debtor's counsel stated that debtor and plaintiff engaged in a physical altercation that lasted a matter of minutes. *Id*., Pardalis Affirmation at π 18.  In his Memorandum of Law, debtor argued that he acted in self-defense. Memorandum of Law at section labeled "B. Meritorious Defense."

46. Debtor filed an affidavit alleging that and plaintiff engaged in "… an altercation that lasted a matter of minutes." *Id*, Plaza affidavit at π 5.  Notably, debtor failed to allege that he acted in self-defense, although he certainly could have.[1]

47. In denying his motion to vacate the default judgment, the Judge held that debtor failed to demonstrate a meritorious defense. Exhibit H. Accordingly, even if this Court does not

---

[1]   In any event, debtor's guilty plea bars him from raising a self-defense claim here. *Vyshedsky v. Soliman* (In re Soliman), 539 B.R. 692, 700, 2015 Bankr. LEXIS 3567, *15-16, 61 Bankr. Ct. Dec. 188 ("Since New York recognizes self-defense as a possible defense to a criminal assault charge, a guilty plea precludes a criminal defendant from later asserting self-defense in a civil assault case, or as here, as a defense to a denial of discharge.")

consider debtor's default judgment, he still cannot re-litigate the assault because the Judge in the civil case found he has no meritorious defense. *Viva Dev. Corp. v. United Humanitarian Relief Fund*, 108 A.D.3d 619, 620 (2d Dept. 2013) ("The appellant is precluded from making a second motion to vacate her default on the same ground raised in her prior motion."); *New York State Higher Educ. Servs. Corp. v Adeniyi*, 72 A.D.3d 1387 (3d Dept. 2010) (denial of motion to vacate default judgment estopped the defendant from raising the same argument in subsequent motion to vacate).

48.  This gives the Court a third basis to hold that debtor is estopped from re-litigating the assault and find that his debt to plaintiff is not dischargeable.

**E.  Debtor Is Collaterally Estopped From Showing that His Debt Is Dischargeable Under 11 U.S.C. 523(a)(6) and 11 U.S.C. 1328(a)(4).**

49.  Bankruptcy code § 1328(a)(4) provides, in relevant part, that:

> (a) Subject to subsection (d), as soon as practicable after completion by the debtor of all payments under the plan, and in the case of a debtor who is required by a judicial or administrative order, or by statute, to pay a domestic support obligation, after such debtor certifies that all amounts payable under such order or such statute that are due on or before the date of the certification (including amounts due before the petition was filed, but only to the extent provided for by the plan) have been paid, unless the court approves a written waiver of discharge executed by the debtor after the order for relief under this chapter, the court shall grant the debtor a discharge of all debts provided for by the plan or disallowed under section 502 of this title, except any debt - (4) for restitution or damages, awarded in a civil action against the debtor as a result of willful or malicious injury by the debtor that caused personal injury to an individual or the death of an individual.

11 U.S.C. 1328(a)(4).

50.  For the same reasons as stated above, the debt is also non-dischargeable under 11 U.S.C. 1328(a)(4).

WHEREFORE it is respectfully requested that this Court grant this motion in all respects and award such other and further relief that is just and proper.  In addition, I hereby certify that this motion has been made in good faith, and in the opinion of counsel, the points raised herein have substantive merit and are not frivolous.

Dated: New York, New York
December 20, 2018

    s/ Eric E. Rothstein
    Eric E. Rothstein
    Rothstein Law PLLC
    Attorneys for Benjamin Plaza, Jr., Creditor
    The Woolworth Building
    233 Broadway, Suite 900
    New York, New York 10279
    (212) 577-9797

**Case No.:**   1-18-42486 (ESS)

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

In re: MICHAEL HEILBRON,

                                                      Debtor,

_____

BENJAMIN PLAZA, JR.,
Chapter 7 Creditor

                                                      Plaintiff,

    -   against –

MICHAEL HEILBRON,

                                                      Defendant.

**MEMORANDUM OF LAW**

**ROTHSTEIN LAW PLLC**
Attorney for **Plaintiff**
The Woolworth Building
233 Broadway, Suite 900
New York, New York 10279
(212) 577-9797