UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
In re:                                                            Chapter 7

MICHAEL HEILBRON,                                                 Case No. 18-42486-ess

                     Debtor.
----------------------------------------------------------------x
BENJAMIN PLAZA, JR.,

                     Plaintiff,

        -against-                                     Adv. Pro. No. 18-01055-ess

MICHAEL HEILBRON,

                     Defendant.
----------------------------------------------------------------x

**MEMORANDUM DECISION ON PLAINTIFF BENJAMIN PLAZA, JR.'S
MOTION FOR SUMMARY JUDGMENT**

Appearances:

Eric Edward Rothstein, Esq.                George Bassias, Esq.
Rothstein Law PLLC                         George Bassias Attorney LLC
The Woolworth Building                     21-83 Steinway
233 Broadway, Suite 900                    Astoria, NY  11105
New York, NY  10279                          *Attorney for Michael Heilbron*
 *Attorney for Benjamin Plaza, Jr.*

**HONORABLE ELIZABETH S. STONG**
**UNITED STATES BANKRUPTCY JUDGE**

## Introduction

This adversary proceeding arises from a fistfight between the debtor, Michael Heilbron, and the plaintiff, Benjamin Plaza, Jr. in June 2008; Mr. Heilbron's criminal plea to a single misdemeanor assault charge; a default judgment in Mr. Plaza's personal injury action against Mr. Heilbron; and now, Mr. Heilbron's attempt to discharge the default judgment debt in a Chapter 7 bankruptcy case.

On May 7, 2018, Mr. Plaza commenced this adversary proceeding by filing a complaint against Mr. Heilbron, the debtor in the underlying Chapter 7 case. Mr. Plaza seeks a determination that the debt that Mr. Heilbron owes to him pursuant to a default judgment for civil claims for assault and battery (the "Default Judgment"), entered in a state court action entitled *Benjamin Plaza, Jr. v. Michael Heilbron*, in New York Supreme Court, Queens County (the "Queens Supreme Court Action"), is nondischargeable under Bankruptcy Code Section 523(a)(6).

On December 20, 2018, Mr. Plaza filed this Motion for Summary Judgment (the "Motion"). From time to time, the Court held hearings on the Motion, at which the parties, by counsel, appeared and were heard, and the record is now closed.

The question posed by this Motion is whether Mr. Plaza is entitled to summary judgment on his nondischargeability claim under the doctrine of collateral estoppel, in light of Mr. Heilbron's guilty plea to a misdemeanor criminal charge of Assault in the Third Degree in Queens Criminal Court, and a default judgment in a civil assault and battery action in Queens Supreme Court. This, in turn, requires the Court to consider the collateral estoppel effect of two

separate proceedings and judgments – the guilty plea in the Queens Criminal Court Action and the Default Judgment in the Queens Supreme Court Action.

## Jurisdiction

Mr. Plaza's nondischargeability claim arises under Bankruptcy Code Section 523(a)(6) and is a core matter. 28 U.S.C. § 157(b)(2)(I). As a core matter, this Court has constitutional authority to enter a final judgment because the claim alleged in the amended complaint stems "from the bankruptcy itself." *Stern v. Marshall*, 564 U.S. 462, 499 (2011).

For these reasons, this Court has jurisdiction to consider and enter judgment on this claim under Judiciary Code Section 1334(b) and the Standing Order of Reference dated August 28, 1986, as amended by Order dated December 5, 2012, of the United States District Court for the Eastern District of New York.

## Background and Procedural History

This nondischargeability action arises from an assault that occurred in 2008, the guilty plea that Mr. Heilbron entered in the resulting criminal case, and a civil default judgment entered in the related lawsuit instituted by Mr. Plaza in 2009. Because they provide the context both for this adversary proceeding and this summary judgment motion, the circumstances of these events are summarized below.

### *The Altercation*

More than eleven years ago, on the evening of June 29, 2008, Mr. Heilbron punched Mr. Plaza in the chin, breaking his jaw. His injury is described in the record as "a fractured mandible that required open reduction, [and] internal fixation" of his jaw. Am. Compl. ¶ 8, ECF No. 6. Soon thereafter, Mr. Heilbron was placed under arrest by the New York City Police Department

and charged with two counts of Assault in the Second Degree, one count of Assault in the Third

Degree, and one count of Harassment in the Second Degree.

Despite having entered a guilty plea to one misdemeanor assault charge, Mr. Heilbron

now denies that he intentionally injured Mr. Plaza. Rather, in his Answer and affidavit in

opposition to the Motion, he states that he and Mr. Plaza "got into an altercation," and that he

does "not recall if [Mr. Plaza] grabbed me first, or I grabbed him first . . . I do not recall hitting

him." Heilbron Aff. ¶ 8, ECF No. 17-1. *See* Ans. ¶ A, ECF No. 3.

*The Queens Criminal Court Action*

On July 1, 2008, Mr. Heilbron was charged with two counts of Assault in the Second

Degree, Penal Law §§ 120.05(1) and (2), one count of Assault in the Third Degree, Penal Law §

120.00(1), and one count of Harassment in the Second Degree, Penal Law § 240.26(1) (the

"Queens Criminal Court Action").

The criminal complaint that resulted from Mr. Heilbron's arrest, sworn to by Detective

Victor Herrera of Queens Detective Area 114 (the "Criminal Complaint"), states that on June 29,

2008 between 10:30 PM and 10:40 PM, at the northeast intersection of 78th Street and 21st

Avenue in Queens, New York, Mr. Heilbron committed an assault in violation of New York

Penal Law Section 120.05-1 (Assault in the Second Degree), Section 120.05-2 (Assault in the

Second Degree), Section 120.00-1 (Assault in the Third Degree), and Section 240.26-1

(Harassment in the Second Degree). Mot. Exh. A, ECF No. 13-1 (Crim. Compl.).

The Criminal Complaint identifies Mr. Plaza as the source of Detective Herrera's

information, and continues:

> [A]n unapprehended other struck [Mr. Plaza] in the side of his head with an
> unknown hard object causing [Mr. Plaza] to fall forward and [Mr. Heilbron]
> proceeded to punch [Mr. Plaza] in his chin causing his jaw to break into two

pieces and his tooth to break and a laceration to [Mr. Plaza's] right ear as well as substantial pain.  . . .

[Detective Herrera] states that [Mr. Plaza] was admitted to a local area hospital where he received surgery for [his] jaw.

[Detective Herrera] states that he is further informed by [Mr. Plaza] that the abovementioned actions of [Mr. Heilbron] and unapprehended other caused him annoyance and alarm.

Mot. Exh. A., Crim. Compl. at 1.

More than seven months later, on February 5, 2009, Mr. Heilbron appeared before the

Honorable Dorothy Chin Brandt of the Criminal Court of the City of New York, County of

Queens: Part AP-6 (the "Queens Criminal Court") for a plea and sentencing hearing.  Mot. Exh.

B, ECF No. 13-2 (Plea Hrg. Tr.).  At that hearing, at which he was represented by counsel, Mr.

Heilbron pleaded guilty to a single charge of Assault in the Third Degree, a class "A"

misdemeanor.  In entering his plea, he responded to a series of questions from Judge Brandt, as

follows:

The Court:  You are pleading guilty to assault in the third degree, a violation of 120.00 of the penal law.  This is an A misdemeanor.  It subjects you to a criminal record.  Are you pleading guilty of your own free will?

[Mr. Heilbron]:  Yes.

The Court:  On or about [6]/29 of last year, about 10:30 in the evening at 78th Street and 21st Avenue in Queens, you knowingly assaulted another person and caused injury to that person, is all this true?

[Mr. Heilbron]:  Yes.

The Court:  Is that acceptable to the People?

[The People]:  Yes.

The Court:  The sentence is a conditional discharge, you have to stay out of trouble for one year, take the 12 week anger management program, and perform five days community service.  You have to pay $200.00 in court fees, $50.00 in DNA fees, total of $250.00.  And, you must obey an order of protection.  Queens

Compliance Part on April 8th, to show proof and to pay.  If you need an extension you will be given an extension.

Mot. Exh. B, Plea Hrg. Tr. at 2:3-25; 3:2-8 (the "Plea").

About three weeks later, on February 27, 2009, the Queens Criminal Court issued a

Certificate of Disposition, No. 86659, which states:

| Date | Court Action | Judge | Part |
|------|-------------|-------|------|
| 2/5/09 | PLED GUILTY & SENTENCE IMPOSED PG 120.00 CONDITIONAL DISCHARGE=1Y COMMUNITY SERVICE=5D ORDER OF PROTECTION=1Y | BRANDT, D C | AP6 |

Mot. Exh. B at p. 4, ECF No. 13-2.  That is, Mr. Heilbron agreed to plead guilty to a single

charge of a Class A misdemeanor, all other charges, including felony charges, were dropped, and

his sentence did not include a period of incarceration.

_The Queens Supreme Court Action_

On March 30, 2009, about two months after Mr. Heilbron entered his guilty plea, Mr.

Plaza sued Mr. Heilbron in the Supreme Court of the State of New York, County of Queens,

seeking monetary damages arising from the Assault in Queens Supreme Court Action.  Mot.

Exh. D, ECF No. 13-5 (Verified Complaint).  On June 12, 2009, the Verified Summons and

Verified Complaint were served by Samara Kane on Jack Sheldon, a co-worker of Mr. Heilbron

at the "Carlyle Hotel-Stewarding [Department]," at the 77th Street Service Entrance.  Mot. Exh.

G at p. 33, ECF No. 13-8.  And on June 15, 2009, Ms. Kane mailed a copy of the Verified

Summons and Verified Complaint to Mr. Heilbron at his place of business.  _Id._

In the Verified Complaint, Mr. Plaza alleges causes of action for assault and battery and

also seeks an award of costs.  Mr. Plaza states that, on June 29, 2008, Mr. Heilbron "assaulted

[Mr. Plaza], . . . causing him to sustain severe and permanent injuries."  Mot. Exh. D ¶ 3.  Mr.

Plaza further alleges, "[t]hat the aforesaid conduct by [Mr. Heilbron] was with the intent [to] cause physical, emotional, and/or psychological harm and/or injury to [Mr. Plaza]." Mot. Exh. D ¶ 21. Finally, Mr. Plaza states that as a result of the altercation with Mr. Heilbron:

> [he] was rendered sick, sore, lame and disabled; sustained severe and painful personal injuries; sustained severe nervous shock, mental anguish and great physical pain; . . . suffered loss of enjoyment of life; was prevented from engaging in his usual occupation for a period of time; and since some of his injuries are of a permanent nature, he will continue to suffer similar damages in the future.

Mot. Exh. D ¶ 27.

Mr. Heilbron did not answer or otherwise respond to the Verified Complaint, and on July 20, 2009, Mr. Plaza moved for the entry of a default judgment. On August 31, 2009, the Queens Supreme Court entered an order granting Mr. Plaza's motion for default judgment and scheduling an inquest and trial on damages for November 4, 2009.

On November 4, 2009, the Queens Supreme Court held an inquest and trial on damages and issued a decision on Mr. Plaza's motion for default judgment. The court awarded Mr. Plaza damages and costs as follows:

| | |
|---|---|
| Pain and Suffering: | $75,000 |
| Future Pain and Suffering: | $50,000 |
| Medical Expenses: | $200 |
| Interest: | Interest from August 31, 2009 until judgment is fully pledged |
| Costs: | $1,132 |

Mot. Exh. F, ECF No. 13-7. And on November 18, 2009, the court entered the Default Judgment.

Following entry of the Default Judgment, Mr. Plaza began efforts to collect on the judgment from Mr. Heilbron. On January 12, 2011, Mr. Plaza moved in Queens Supreme Court to compel Mr. Heilbron to comply with an information subpoena served pursuant to CPLR

5224(3).  But on February 22, 2011, the court denied Mr. Plaza's motion, because the subpoena "was returned marked 'unclaimed' by the post office," and there was no indication that Mr. Heilbron denied receipt or that "the address to which the subpoena was mailed is the [Mr. Heilbron's] residence or that his place of employment could not be ascertained or that it was even attempted."  Mot. Exh. G at p. 50.

More than five years later, and nearly seven years after it was entered, Mr. Heilbron sought review of the Default Judgment.  On August 29, 2016, he filed a request for an order to show cause for a temporary restraining order and injunctive relief (the "OSC Request"), and argued that the Default Judgment was improper because the Verified Summons and Verified Complaint were never properly served on him.  He sought an order staying the execution of judgment, vacating the Default Judgment, and terminating the garnishments of his wages, among other relief.

In support of the OSC Request, Mr. Heilbron argued that he was not properly served because the Verified Summons and Verified Complaint were served on Mr. Sheldon, not on him.  He also argued that he never received the Verified Summons and Verified Complaint that were mailed to his place of business, and that he was not authorized to receive personal mail at that address.  And he argued that even if service was made at his home address, it was not proper under CPLR § 308.  For those same reasons, Mr. Heilbron argued that the motion for default judgment was untimely, and that the Default Judgment should be vacated.

In addition, Mr. Heilbron argued that he had meritorious defenses to Mr. Plaza's claims, and should have the opportunity to assert them.  In light of these defenses, he asserted that injunctive relief was warranted in order to prevent irreparable harm in the form of the continued garnishment of his wages.

And finally, Mr. Heilbron also argued that the record did not support the finding that Mr. Plaza had suffered pain and injury to the extent that a judgment in excess of $124,000 was warranted.

On December 5, 2016, the Queens Supreme Court denied Mr. Heilbron's OSC Request. The court found that Mr. Heilbron "does not set forth a reasonable excuse for his default in appearing" and similarly did not set forth "a meritorious defense to the action." Mot. Exh. H.

*This Bankruptcy Case*

On April 30, 2018, Mr. Heilbron filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code, Case No. 18-42486. On the same day, Alan Nisselson was appointed as the Chapter 7 Trustee in the case. On June 7, 2018, Mr. Nisselson filed a Report of No Distribution, and on August 8, 2018, Mr. Heilbron received a discharge.

*This Adversary Proceeding*

On May 7, 2018, Mr. Plaza commenced this adversary proceeding by filing the Complaint to seek a determination that the Default Judgment debt is nondischargeable under Bankruptcy Code Section 523(a)(6), because Mr. Heilbron's actions were "willful and malicious and meant to cause injury" to him. Compl. ¶ 8, ECF No. 1.

On May 10, 2018, Mr. Heilbron filed an answer to the Complaint (the "Answer"). In the Answer, Mr. Heilbron denies that his actions were "willful and malicious and meant to cause injury," and also denies that he "intended to injure [Mr. Plaza]" or "engaged in conduct that was substantially certain to cause injury to [Mr. Plaza]." Compl. ¶¶ 8, 9; Ans. ¶ 1. And he states that his actions "were not willful and malicious; and [he] did not mean and intend for [Mr. Plaza] to sustain the injuries he sustained." Ans. ¶ 1.

8

Mr. Heilbron also denies that he knowingly assaulted Mr. Plaza and states that "while [Mr. Heilbron] knowingly became engaged in a fight he did not knowingly intend to injure [Mr. Plaza] in the manner that he was injured."  Ans. ¶ 2.

And Mr. Heilbron asserts three affirmative defenses.  He asserts that Mr. Plaza's "injuries were caused in whole or part by his own actions in intimidating, harassing, threatening, defendant and mutually engaging in a fight of passion over a common female love interest," that he and Mr. Heilbron "were knowingly engaging in a mutual fight . . ., in the heat of passion, however, he never intended, willfully and maliciously to injure [Mr. Plaza]," and that his "conduct and [Mr. Plaza's] mutual conduct was reckless and substantially certain to cause injury to each other."  Ans. ¶¶ 3-5.

On September 17, 2018, Mr. Plaza filed an amended complaint (the "Amended Complaint"), stating that he seeks a determination that the Default Judgment is nondischargeable under Section 523(a)(6):

> All or part of the debt owed to plaintiff by the debtor is non-dischargeable as it is a debt for willful and malicious injury caused by the debtor to Mr. Plaza as aforesaid within . . . the meaning of Section 523(a)(6) of the Bankruptcy Code.

Am. Compl. ¶ 21, ECF No. 6.

On September 19, 2018, Mr. Heilbron filed an Amended Answer.  In the Amended Answer, Mr. Heilbron denies the allegation that he "assaulted plaintiff, Benjamin Plaza, Jr., by punching him in his chin, causing him to suffer, *inter alia*, a fractured mandible that required open reduction, internal fixation."  Am. Compl. ¶ 8.  *See* Am. Ans. ¶ A, ECF No. 7.  He also denies that his "actions were willful and malicious and meant to cause injury to" Mr. Plaza.  Am. Compl. ¶ 9.  *See* Am. Ans. ¶ A.  And he denies that his "actions intended to injure plaintiff, Benjamin Plaza, Jr., or [he] engaged in conduct that was substantially certain to cause injury to

Plaza." Am. Compl. ¶ 10. *See* Am. Ans. ¶ A. Mr. Heilbron also asserts the affirmative defense

that he "did not intend for plaintiff to sustain the injuries complained of." Am. Ans. ¶ B.

*This Motion for Summary Judgment*

On December 20, 2018, Mr. Plaza filed this Motion, the declaration and accompanying

exhibits of Mr. Plaza's counsel, Eric E. Rothstein, and a memorandum of law. He argues that the

Default Judgment is nondischargeable because it is the result of a "'willful and malicious injury

by the debtor to another entity'" under Section 523(a)(6). Pl's Mem. ¶ 5, ECF No. 14-1. And he

argues that summary judgment is warranted under the doctrine of collateral estoppel in light of

the Plea and the Default Judgment. Pl's Mem. ¶¶ 25, 43, and 48.

He notes that the preclusive effect of a state court determination in a subsequent federal

action is governed by the law of the state where the prior judgment was entered – in this case,

New York.

As to the preclusive effect of the Plea in Mr. Heilbron's criminal case, Mr. Plaza argues

that while the Plea and the Certificate of Disposition state only that Mr. Heilbron pleaded guilty

to Assault in the Third Degree under New York Penal Law § 120.00, Mr. Heilbron should be

collaterally estopped from contesting the factual basis for this claim, as a consequence of the

intentional nature of the assault and Mr. Heilbron's statements in connection with entering his

plea. Mr. Plaza additionally points to the fact that at the plea hearing, Mr. Heilbron admitted that

he "'knowingly assaulted another person and caused injury to that person.'" Pl's Mem. ¶ 28

(quoting Plea Hrg. Tr. at 2:17-18). Mr. Plaza also argues that the Plea establishes each element

of a nondischargeability claim under Section 523(a)(6), including that the conduct at issue was

"willful" and "malicious."

As to the preclusive effect of the Default Judgment in the Queens Supreme Court Action,

Mr. Plaza notes that his claim in that court was for the torts of assault and battery, and points to New York law stating that causes of action for "negligent assault" and "negligent battery" do not exist under New York law.  Pl's Mem. ¶ 38 (citing *Babikian v. Nikki Midtown, LLC,* 60 A.D.3d 470, 471 (N.Y. App. Div. 1st Dep't 2009)).  For that reason as well, he argues, Mr. Heilbron should be precluded from contesting the factual basis for this nondischargeability claim.

And Mr. Plaza notes that Mr. Heilbron sought to vacate the Default Judgment, arguing that the altercation lasted for only a few minutes and that he was acting in self-defense.  But he also points out that the state court denied Mr. Heilbron's OSC Request, and found that Mr. Heilbron had not established the prospect of a meritorious defense.  As a consequence, Mr. Plaza argues, Mr. Heilbron should not be able to assert the affirmative defense of self-defense here, because the Queens Supreme Court did not find it to be a meritorious defense to vacate the Default Judgment.  Finally, he observes that in entering his guilty plea to a charge of criminal assault, Mr. Heilbron waived the ability to assert that affirmative defense here.

*Mr. Heilbron's Opposition*

On December 27, 2018, Mr. Heilbron filed opposition to the Motion in the form of an affirmation of his attorney George Bassias and the affidavits of Mr. Heilbron and Holger Adrian Carrera, a witness to the altercation.

Mr. Heilbron disputes that he "willfully" and "maliciously" inflicted injury on Mr. Plaza. Instead, Mr. Heilbron argues that at most, he acted recklessly, and therefore, his actions were not "willful" or "malicious" for purposes of a Section 523(a)(6) claim.  Bassias Aff. ¶ 6, ECF No. 17.  He states, "I do not recall hitting him.  We may both have been throwing punches.  Or he may just have hurt himself another way."  Heilbron Aff. ¶ 8, ECF No. 17-1.

Mr. Heilbron also argues that the determination that a debt is nondischargeable requires a "deliberate or intentional injury," not just an act that leads to an injury.  Bassias Aff. ¶ 6.  And he argues that the Default Judgment was the consequence of reckless, not willful and malicious, conduct, and therefore is outside the scope of Section 523(a)(6).

In addition, Mr. Heilbron asserts that Mr. Plaza's reliance on collateral estoppel is not well-founded.  He argues that in order for collateral estoppel to apply, "the issue must actually have been litigated and adjudicated in the prior action, and this does not apply to default judgments or stipulated judgments unless it's clear on the record the parties intended to be bound by it in future suits."  Bassias Aff. ¶ 8.  He also states that the issues here "are not identical to the State Court and the standards used are different."  Bassias Aff. ¶ 12.  He points out that in the civil case, "there was never a trial in the State Court proceeding," and that "[t]he defendant and plaintiff never testified and there clearly was not a complete adjudication."  Bassias Aff. ¶ 12.  And in the criminal case, he observes that he "pled guilty . . . without a trial and there was no stipulation as to it being applied to future suits."  Bassias Aff. ¶ 12.

Finally, Mr. Heilbron argues that a bankruptcy court "is not limited to the judgment and record of a prior state court proceeding when considering the dischargeability of a debt."  Bassias Aff. ¶ 9.  He argues that a trial would show that Mr. Plaza is not a credible witness.  He highlights several asserted points of disagreement between Mr. Plaza's deposition testimony and his own affidavit, including with respect to how long he and Mr. Plaza have known each other and the nature of their interactions.  *See, e.g.*, Heilbron Aff. ¶¶ 3, 4, 14-17, 19.  Mr. Heilbron points to these differences in arguing that summary judgment is not warranted, and that a trial is necessary.

Mr. Heilbron also disputes Mr. Plaza's description of the Assault.  He states that he and Ms. Carrera went to Mr. Plaza's home to speak with him after he "discovered that [Mr. Plaza] friended my girlfriend on social media and was flirting with her and trying to date her." Heilbron Aff. ¶ 5.  He states that upon arriving at Mr. Plaza's home, he called him and Mr. Plaza came out to speak with him while Ms. Carrera stayed in the car.

At that point, Mr. Heilbron states, Mr. Plaza became "very rude and loud and then [they] got into an altercation."  Heilbron Aff. ¶ 8.  Mr. Heilbron states that he does not recall who grabbed whom first, or if he hit Mr. Plaza, and that he fell on top of a car.  He states that Mr. Plaza never fell to the ground, nor did anyone appear hurt.  And he states that it was not until a few days later, when he was placed under arrest, that he learned that Mr. Plaza's jaw was broken.

Mr. Heilbron also relies on the affidavit of Ms. Carrera, which was executed on September 19, 2018, more than ten years after the events at issue.  Ms. Carrera states that on June 29, 2008, Mr. Heilbron called her to ask her to accompany him to pick up his girlfriend, Melissa.  Carrera Aff. ¶ 1, ECF No. 17-2.  She states that after picking up Melissa and dropping her off, Mr. Heilbron drove to Mr. Plaza's home, called Mr. Plaza and stated that "they needed to talk."  Carrera Aff. ¶¶ 2, 3.  She states that when they arrived, Mr. Plaza was waiting outside for Mr. Heilbron, that she waited in the car while Mr. Plaza and Mr. Heilbron spoke, and that she could not hear their conversation.  At some point, she heard yelling and saw that Mr. Heilbron and Mr. Plaza were "grabbing each other" and "getting into an altercation."  Carrera Aff. ¶ 4. Ms. Carrera states that she got out of the car and separated the two, and then she and Mr. Heilbron returned to the car and left.  She states that she did not see any punches exchanged between Mr. Plaza and Mr. Heilbron.  And she states that before that day, she did not know Mr. Plaza, but was aware that he went to the same high school as she and Mr. Heilbron.

Separately, Mr. Heilbron states that he was never served with the Verified Summons and Complaint in the Queens Supreme Court Action. He states that the "summons and complaint were delivered to my job but an area that is responsible for shipping and receiving, loading dock, not legal documents; at a big hotel, The Carlisle. The first time I found out about the civil lawsuit was when my paycheck was attached." Heilbron Aff. ¶ 20. At the same time, he acknowledges that "the lawyers were unsuccessful in setting aside the judgment" and rather than pursue an appeal, he decided to hire a bankruptcy attorney and file for bankruptcy. Heilbron Aff. ¶ 20.

## **The Applicable Law**

### *The Summary Judgment Standard*

Federal Rule of Civil Procedure 56(c), made applicable to this adversary proceeding by Bankruptcy Rule 7056, provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

The moving party has the burden of demonstrating the absence of a genuine dispute as to any material fact, and all of the inferences to be drawn from the underlying facts must be viewed by the court in the light most favorable to the party opposing the motion. *See Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 743 (2d Cir. 2003) (holding that the court's role is "to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments") (internal

quotation omitted).  Where a plaintiff seeks summary judgment, it must demonstrate that there is

no genuine dispute as to a material fact as to each element of its claim.  If it does not, then

summary judgment will be denied.  *See Smith v. Goord*, 2008 WL 902184, at *4 (N.D.N.Y. Mar.

31, 2008), *aff'd*, 375 F. Appx. 73 (2d Cir. 2010) (citing *Anderson*, 477 U.S. at 250 n.4) (holding

that summary judgment should be denied where the moving party does not meet its initial burden

to show the absence of a genuine dispute as to a material fact with respect to each essential

element of the claim).

Once the moving party satisfies its initial burden, "the burden then shifts to the

nonmoving party to come forward with evidence sufficient to create a genuine dispute as to a

material fact for trial."  *Silverman v. United Talmudic Acad. Torah Vyirah, Inc. (In re Allou*

*Distribs., Inc.)*, 446 B.R. 32, 49 (Bankr. E.D.N.Y. 2011).  The nonmoving party "must do more

than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita*

*Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  "Where the record taken as a

whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine

issue for trial.'"  *Matsushita*, 475 U.S. at 587.  *See Anderson*, 477 U.S. at 249-50 (observing that

"if the evidence is merely colorable . . . or is not significantly probative . . . summary judgment

may be granted").

"Statements in the pleadings alone are not sufficient to meet this burden."  *In re Allou*

*Distribs., Inc.*, 446 B.R. at 49.  Rather, "[e]stablishing such facts requires going beyond the

allegations of the pleadings as the moment has arrived to 'put up or shut up.'"  *In re Eugenia VI*

*Venture Holdings, Ltd. Litig.*, 649 F. Supp. 2d 105, 117 (S.D.N.Y. 2008) (quoting *Weinstock v.*

*Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000), *aff'd*, 370 F. App'x 197 (2d Cir. 2010), *cert.*

*denied*, 540 U.S. 811 (2003)).  "Unsupported allegations in the pleadings thus cannot create a material issue of fact."  *In re Eugenia VI Venture Holdings, Ltd. Litig.*, 649 F. Supp. 2d at 117.

As the Supreme Court has observed, "Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' [and] designate 'specific facts showing that there is a genuine issue for trial.'"  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  A party "must 'set forth' by affidavit or other evidence 'specific facts' to survive a motion for summary judgment . . . and must ultimately support any contested facts with evidence adduced at trial."  *Bennett v. Spear*, 520 U.S. 154, 168 (1997) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).  As one court observed, "[t]he non-moving party may not establish that there is a genuine issue to be resolved at trial through mere allegations or denials of the adverse party's pleadings, but rather must demonstrate by affidavit or other admissible evidence that there are genuine issues of material fact or law."  *Beare v. Millington*, 2014 WL 1236750, at *3 (E.D.N.Y. Mar. 25, 2014), *aff'd*, 613 F. App'x 56 (2d Cir. 2015).

Claims that address the defendant's intent raise additional considerations.  The Second Circuit has noted that "summary judgment is ordinarily inappropriate where an individual's intent and state of mind are implicated.  . . . The summary judgment rule would be rendered sterile, however, if the mere incantation of intent or state of mind would operate as a talisman to defeat an otherwise valid motion."  *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985), *cert. denied*, 474 U.S. 829 (1985).  And "'[c]ases in which the underlying issue is one of motivation, intent, or some other subjective fact are particularly inappropriate for summary judgment, as are those in which the issues turn on the credibility of the affiants.'"  *Orange Lake Assocs. v. Kirkpatrick*, 825 F. Supp. 1169, 1177 (S.D.N.Y. 1993) (quoting *Conrad v. Delta Air Lines, Inc.*,

494 F.2d 914, 918 (7th Cir. 1974), *aff'd*, 21 F.3d 1214 (2d Cir. 1994)).  *See Tolbert v. Smith*, 790

F.3d 427, 434 (2d Cir. 2015) (stating that there is a "'need for caution about granting summary

judgment to an employer in a discrimination case where . . . the merits turn on a dispute as to the

employer's intent.'") (quoting *Holcomb v. Iona Coll.,* 521 F.3d 130, 137 (2d Cir. 2000)).  *See Wu*

*v. Lin (In re Lin)*, 576 B.R. 32, 44-45 (Bankr. E.D.N.Y. 2017) (considering summary judgment

based on collateral estoppel effect of district court default judgment).

But summary judgment may nevertheless be appropriate in cases that turn on a

defendant's intent or state of mind, where another court has addressed and determined that issue.

Still, caution is warranted.  As one court has observed, "[a]lthough summary judgment may be

warranted in certain circumstances even when examining state of mind, courts must be cautious

in such cases, and, as a result . . . disputes regarding intent are generally decided after a

trial/evidentiary hearing resolving such factual issues." *Adler v. Ng (In re Adler)*, 395 B.R. 827,

843 (E.D.N.Y. 2015).

The Elements of a Bankruptcy Code Section 523(a)(6) Claim

In order to establish that a debt should not be discharged under Section 523(a)(6), a

plaintiff must show that the debt at issue resulted from a "willful and malicious injury by the

debtor to another entity or to the property of another entity."  11 U.S.C. § 523(a)(6).  That is, a

plaintiff must establish three elements to succeed on a Section 523(a)(6) claim – first, that the

debtor acted willfully, second, that the debtor acted maliciously, and third, that the debtor's

willful and malicious actions caused injury to the plaintiff or the plaintiff's property.  And malice

is not the same as willfulness – as another court observed, "the terms 'willful' and 'malicious'

are separate elements with distinct meanings and both must be satisfied by a preponderance of

the evidence." *Cocoletzi v. Orly (In re Orly),* 2016 WL 4376947, at *3 (Bankr. S.D.N.Y. Aug.

10, 2016) (internal citations omitted).  And "to promote the 'fresh start' policy of the Bankruptcy Code, courts narrowly construe the exceptions to dischargeability enumerated in § 523(a)(6)."  *In re Orly,* 2016 WL 4376947, at *3 (citing *In re Bonnanzio,* 91 F.3d 296, 300 (2d Cir. 1996)).

As to the first element, that the debtor acted willfully, the Bankruptcy Code does not define "willful."  As the Supreme Court has noted:

> The word "willful" is defined in Black's Law Dictionary as "voluntary" or "intentional."  Black's Law Dictionary 1434 (5th ed. 1979).  Consistently, legislative reports note that the word "willful" in § 523(a)(6) means "deliberate or intentional."  *See* S. Rep. No. 95-989, p. 79 (1978) U.S. Code Cong. & Admin. News pp. 5787, 5864; H.R. Rep. No. 95-595, p. 365 (1977) U.S. Code Cong. & Admin. News pp. 5963, 6320.

*Kawaauhau v. Geiger*, 523 U.S. 57, 61 n.3 (1998).  And as the Court concluded, "[t]he word 'willful' in (a)(6) modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional *injury,* not merely a deliberate or intentional *act* that leads to injury." *Kawaauhau,* 523 U.S. at 61 (emphasis in original).

And the Supreme Court also observed that the intent required under Section 523(a)(6) is akin to the intent required for an intentional tort – that is, "that the actor intend 'the *consequences* of an act,' not simply 'the act itself.'"  *Kawaauhau*, 523 U.S. at 61-62 (quoting *Restatement (Second) of Torts* § 8A, comment *a*, p. 15 (1964)).  The Court stated that "[an] act which 'necessarily causes injury and is done intentionally, may be said to be done willfully and maliciously.'"  *Kawaauhau*, 523 U.S. at 62-63 (quoting *Tinker v. Colwell*, 193 U.S. 473, 487 (1904)).

Considering this same element, one bankruptcy court observed that "an act is willful, for the purposes of § 523(a)(6) when an actor had actual intent to cause injury or 'was substantially certain that the injury would occur.'"  *Owens v. Powell (In re Powell)*, 567 B.R. 429, 434 (Bankr. N.D.N.Y. 2017) (quoting *Margulies v. Hough (In re Margulies)*, 541 B.R. 156, 162 (Bankr.

S.D.N.Y. 2015)).  Another noted that "[a]n act is willful when the debtor intends to inflict the injury or knew that the injury was substantially certain to result." *Margulies v. Hough (In re Margulies)*, 517 B.R. 441, 453 (Bankr. S.D.N.Y. 2015) (internal citations omitted).  *See In re Alicea*, 230 B.R. 492, 507 (Bankr. S.D.N.Y. 1999) (stating that "'[w]illful,' as used in § 523(a)(6), means 'a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury,' and includes conduct that the actor is substantially certain will cause injury") (internal citations omitted); *In re Mitchell*, 227 B.R. 45, 51 (Bankr. S.D.N.Y. 1998) (willfulness "includes conduct that the actor is substantially certain will cause injury") (internal citations omitted).

As to the second element, whether the debtor acted maliciously, the Second Circuit has concluded that the term "malicious" in this context means "'wrongful and without just cause or excuse, even in the absence of personal hatred, spite, or ill-will.'"  *Ball v. A.O. Smith Corp.*, 451 F.3d 66, 69 (2d Cir. 2006) (quoting *Navistar Fin. Corp. v. Stelluti (In re Stelluti),* 94 F.3d 84, 87 (2d Cir. 2003)).  And "[t]he conduct complained of must be intended to or necessarily cause injury in order for the debt to be determined nondischargeable."  *Yash Raj Films (USA) v. Ahmed (In re Ahmed)*, 359 B.R. 34, 41 (Bankr. E.D.N.Y. 2005).

In addition, "[m]alice may also be implied from 'the acts and conduct of the debtor in the context of [the] surrounding circumstances.'"  *Yash Raj Films (USA) Inc. v. Akhtar (In re Akhtar)*, 368 B.R. 120, 130-31 (Bankr. E.D.N.Y. 2007) (quoting *In re Stelluti,* 94 F.3d at 88). Further, "a court may find malice 'when anyone of reasonable intelligence knows that the act in question is contrary to commonly accepted duties in the ordinary relationships among people, and injurious to another.'"  *In re Akhtar*, 368 B.R. at 132 (citation omitted).

Whether circumstances are sufficiently aggravating to support a finding of malice is a fact-specific determination made on a case-by-case basis. *See In re Stelluti*, 94 F.3d 87 (stating that malice may be implied "by the acts and conduct of the debtor in the context of [the] surrounding circumstances") (internal quotations and citation omitted). "A court should look to the totality of the circumstances to determine malice." *Forrest v. Bressler (In re Bressler),* 387 B.R. 446, 455 (Bankr. S.D.N.Y. 2008).

Malice can be inferred from a defendant's criminal conviction, if the criminal court necessarily found that, in substance, the defendant caused injury to a plaintiff without just cause or excuse. *In re Powell*, 567 B.R. at 437 (observing that "[t]he malice element can also be inferred from Defendant's conviction because the criminal court implicitly found that Defendant caused injury to Plaintiff without just cause or excuse.")

But courts are careful to permit a defendant to have their day in court. As one bankruptcy court observed in denying the plaintiff's summary judgment motion:

> Because the state law civil assault and battery cause of action did not require [the plaintiff] to establish that [the defendant] intended to injure [him] – a required element of the denial of discharge cause of action – the Judgment in the civil case is not alone sufficient to trigger collateral estoppel entitling [the plaintiff] to judgment declaring the debt non-dischargeable. The issue is whether the missing element (intent to injure) is supplied by collateral estoppel from [the defendant's] guilty plea. This is a close question on the record before the Court.

*Vyshedsky v. Soliman (In re Soliman),* 515 B.R. 179, 183 (Bankr. S.D.N.Y. 2014).

To the same effect, an assertion of self-defense may amount to an admission that the underlying act was intentional and, in the event that justification is not established, an admission that the act was malicious. As the same court observed in ruling for the plaintiff after trial, "[the defendant] attempted to justify his actions by claiming that he bit the [plaintiff]'s nose in self-defense. This is tantamount to an admission that [the plaintiff]'s injury was willfully caused."

*Vyshedsky v. Soliman (In re Soliman)*, 539 B.R. 692, 699 (Bankr. S.D.N.Y. 2015). *See In re Taylor,* 322 B.R. 306, 310 (Bankr. N.D. Ohio 2004) (where evidence did not support claim of self-defense, the bankruptcy court found that "the only conclusion that can be drawn is that, within the meaning of § 523(a)(6), the Defendant, in causing injury to the Plaintiff, acted both 'willfully' and 'maliciously.'").

As to the third element, that the debtor's actions caused injury to the plaintiff or the plaintiff's property, here too, the term "injury" is not defined in the Bankruptcy Code. Courts give a plain meaning to the term "injury" when considering nondischargeability claims under Section 523(a)(6), and find that this element is met where the debtor's actions caused physical harm to the plaintiff. *See, e.g., In re Soliman,* 539 B.R. at 700 (court stated that plaintiff clearly suffered injury after being bitten in the nose by the debtor, requiring stiches); *Hernandez v. Greene (In re Greene),* 397 B.R. 688, 695 (Bankr. S.D.N.Y. 2008) (court found injury where the debtor stabbed the plaintiff in the abdomen with a knife); *In re Powell,* 567 B.R. at 433 (court stated that defendant indisputably caused serious injuries to plaintiff by knocking him to the ground and kicking him in the face, causing plaintiff to suffer broken eye socket and orbital bone). And courts agree that "'[t]he conduct complained of must be intended to or necessarily cause injury in order for the debt to be determined nondischargeable.'" *Guggenheim v. Birnbaum (In re Birnbaum)*, 513 B.R. 788, 803 (Bankr. E.D.N.Y. 2014) (quoting *In re Ahmed*, 359 B.R. at 41).

And finally, the standard of proof necessary in a nondischargeability action is by a preponderance of the evidence. As the Supreme Court has stated, "we hold that the standard of proof for the dischargeability exceptions in 11 U.S.C. § 523(a) is the ordinary preponderance-of-the-evidence standard." *Grogan v. Garner*, 498 U.S. 279, 291 (1991).

The Doctrine of Collateral Estoppel

Collateral estoppel "bars 'repetitious suits involving the same cause of action' once 'a court of competent jurisdiction has entered a final judgment on the merits.'" *In re Birnbaum*, 513 B.R. at 799-800 (quoting *NML Capital, Ltd. v. Banco Central de la Republica Argentina*, 652 F.3d 172, 184 (2d Cir. 2011), *cert. denied*, 567 U.S. 944 (2012)). As the Restatement (Second) of Judgments states:

> When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.

*Restatement (Second) of Judgments* § 27 (1982).

The Supreme Court has confirmed that collateral estoppel may be invoked in Section 523 actions. As the Court noted, "collateral estoppel principles do indeed apply in discharge exception proceedings pursuant to § 523(a)." *Grogan*, 498 U.S. at 284, n.11.

New York's Collateral Estoppel Rule

In New York, "[t]he doctrine of collateral estoppel precludes a party from relitigating 'an issue which has previously been decided against him in a proceeding in which he had a fair opportunity to fully litigate the point.'" *Kaufman v. Eli Lilly & Co.*, 65 N.Y.2d 449, 455 (1985) (quoting *Gilberg v. Barbieri*, 53 N.Y.2d 285, 291 (1981)). This doctrine "bars relitigation of an issue when (1) the identical issue necessarily was decided in the prior action and is decisive of the present action, and (2) the party to be precluded from relitigating the issue had a full and fair opportunity to litigate the issue in the prior action." *Evans v. Ottimo*, 469 F.3d 278, 281 (2d Cir. 2006). As then-Judge Sotomayor of the Second Circuit noted, "'[u]nder New York law, collateral estoppel prevents a party from relitigating an issue decided against that party in a prior

adjudication.'" *Farrell v. Burke*, 449 F.3d 470, 482-83 (2d Cir. 2006) (quoting *Curry v. City of Syracuse*, 316 F.3d 324, 331 n.4 (2d Cir. 2003)).

New York's collateral estoppel rule also accords preclusive effect to default judgments, under the appropriate circumstances. For example, "applying the preclusion law of New York," the Second Circuit gave collateral estoppel effect to a New York state court default judgment because it "resolved all issues necessary to establish nondischargeability," and therefore was "decisive of the present action." *Evans*, 469 F.3d at 281. And as one bankruptcy court observed, "New York gives collateral estoppel effect to issues 'necessarily decided' by the default judgment, i.e. matters essential to sustain the judgment." *In re Bressler,* 387 B.R. at 455 (quoting *Weiss v. Alicea (In re Alicea),* 230 B.R. 492, 505 (Bankr. S.D.N.Y. 1999)).

And New York courts give preclusive effect to prior criminal convictions in subsequent civil actions, again under the appropriate circumstances. *D'Arata v. N.Y. Cent. Mut. Fire Ins. Co.,* 76 N.Y.2d 659, 666 (1990) (observing that "[t]he intent to cause serious physical injury found . . . in the criminal action would certainly be sufficient to establish the requisite element of intent in the [civil court] action."). As one bankruptcy court observed, "New York gives collateral estoppel effect to criminal guilty pleas in subsequent civil proceedings addressing the same incident." *In re Soliman*, 515 B.R. at 187. Of course, in the criminal context, as in the civil context, the extent of the preclusive effect will be determined by the extent to which the issues are identical. But even where all of the issues are not identical, "collateral estoppel could still apply to discrete issues." *In re Soliman*, 515 B.R. at 189.

<u>Identity of the Issues.</u> The first requirement of collateral estoppel under New York law is that the identical issue is present in both the prior action and the present one. This calls for a plaintiff to show that there is "an identity between the particular matter in the second action and

that presented in the first." *D'Arata*, 76 N.Y.2d at 666. Viewed another way, as Chief Judge Cardozo observed, this means that "the two causes of action have such a measure of identity that a different judgment in the second would destroy or impair rights or interests established by the first." *Schuylkill Fuel Corp. v. B. & C. Nieberg Realty Corp.*, 250 N.Y. 304, 307 (1929) (Cardozo, Ch. J.).

As the Supreme Court observed, relitigation will be barred where "the issues presented by this litigation are in substance the same as those resolved" in the prior case. *Montana v. United States*, 440 U.S. 147, 155 (1979). At the same time, courts do not require perfect identity, and substantial identity will suffice. As the Supreme Court stated, litigation may be precluded where "the issues presented by this litigation are in substance the same as those resolved" in the prior case. *Id.* That is, as a matter of fairness and common sense, in order for a party to be barred from contesting an issue in the present action, it must be the same issue that was determined in the prior one.

<u>Full and Fair Opportunity To Litigate the Issue.</u> The second requirement of collateral estoppel under New York law is that "the party to be precluded from relitigating the issue had a full and fair opportunity to litigate the issue in the prior action." *Evans*, 469 F.3d at 281. In order for an issue to have been "actually litigated," it must have been "properly raised by the pleadings or otherwise placed in issue and actually determined in the prior proceeding." *D'Arata*, 76 N.Y.2d at 667.

But a "full and fair opportunity to litigate" does not require a trial on the merits. As noted above, the Second Circuit has applied New York's collateral estoppel rule to preclude a party from relitigating an issue that was previously determined by a judgment entered on default. As the Second Circuit found in a dischargeability action where the defendant had defaulted in the

state court action, "'[i]n New York, when a party defaults by failure to answer . . . the defaulting litigant may not further contest the liability issues.'" *Evans*, 469 F.3d at 282 (quoting *Kelleran v. Andrijevic,* 825 F.2d 692, 694 (2d Cir. 1987)).

More recently, courts in the Second Circuit have noted that New York law in this area may be unsettled. *See, e.g., In re Soliman,* 515 B.R. at 185 (stating that the Second Circuit's conclusion in *Evans* "appears questionable"); *DeCurtis v. Ferrandina (In re Ferrandina)*, 533 B.R. 11, 24 n.14 (Bankr. E.D.N.Y. 2015) (stating that "not all courts agree that the Second Circuit properly stated New York's application of issue preclusion arising from a default judgment"). This suggests that it may be appropriate, in applying the Second Circuit's rule, to consider the circumstances of the default, including whether the party to be barred has had an opportunity to seek review of the default in the state court.

And the burden of establishing the absence of a full and fair opportunity to litigate the issue is on the party against whom collateral estoppel is asserted, not the proponent of the doctrine. As the New York Court of Appeals has observed, "the party seeking the benefit of collateral estoppel has the burden of demonstrating the identity of the issues . . . whereas the party attempting to defeat its application has the burden of establishing the absence of a full and fair opportunity to litigate the issue." *Kaufman v. Eli Lilly & Co.*, 65 N.Y.2d 449, 456 (1985). *See D'Arata*, 76 N.Y.2d at 664 (stating that "the burden is on the party attempting to defeat the application of collateral estoppel to establish the absence of a full and fair opportunity to litigate").

<u>Necessarily Decided in the Prior Action.</u>  The third requirement of New York's collateral estoppel rule is that the issue was necessarily decided in the prior action. That is, the plaintiff must establish "that this identical issue was necessarily decided in the first proceeding."

*D'Arata*, 76 N.Y.2d at 666. This requirement means that a party will *not* be precluded from addressing issues that were *not* necessary to the first court's determination. As this Court has observed in a similar context, this requirement "is satisfied when the issue was necessary to support a valid and final judgment on the merits in the prior case, and it prevents collateral estoppel from being invoked when the prior determination is not final, or the issue was not necessary to that case." *In re Lin*, 576 B.R. at 56. Viewed another way, if the first court did not need to decide the particular issue in order to reach its conclusion, the second court should not defer to its ruling.

    <u>Decisive of the Present Action.</u> The fourth requirement of New York's collateral estoppel rule is that the issue is decisive in the present action. As this and other courts have noted, the requirement that "the issue that was raised previously must be decisive of the present action . . . makes New York collateral estoppel law slightly different from federal collateral estoppel law." *In re Lin*, 576 B.R. at 49 (internal quotations and citations omitted). This additional requirement has the effect that collateral estoppel – and the preclusion that it imposes on a party – will only be available where the issue is of material, and perhaps dispositive, significance to the matter.

*New York Penal Code*

    New York Penal Code Section 120.00 provides that a person is guilty of Assault in the Third Degree when either: (1) with intent to cause physical injury to another person, he causes such injury to such person or to a third person; or (2) he recklessly causes physical injury to another person; or (3) with criminal negligence, he causes physical injury to another person by means of a deadly weapon or a dangerous instrument.

New York Penal Code Section 15.05 provides the following definitions of culpable

mental states:

1. "Intentionally."  A person acts intentionally with respect to a result or to conduct described by a statute defining an offense when his conscious objective is to cause such result or to engage in such conduct.

2. "Knowingly."  A person acts knowingly with respect to conduct or to a circumstance described by a statute defining an offense when he is aware that his conduct is of such nature or that such circumstance exists.

3. "Recklessly."  A person acts recklessly with respect to a result or to a circumstance described by a statute defining an offense when he is aware of and consciously disregards a substantial and unjustifiable risk that such result will occur or that such circumstance exists.  The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation. A person who creates such a risk but is unaware thereof solely by reason of voluntary intoxication also acts recklessly with respect thereto.

N.Y. Penal Code § 15.05.

### Discussion

Mr. Plaza seeks summary judgment determining that the Default Judgment is

nondischargeable under Bankruptcy Code Section 523(a)(6).  He argues that he is entitled to

summary judgment because collateral estoppel bars Mr. Heilbron from relitigating each of the

elements of this nondischargeability claim.

To prevail on his nondischargeability claim, Mr. Plaza must show that the Default

Judgment debt arose from a "willful" and "malicious" act which caused injury to him or to his

property.  11 U.S.C. § 523(a)(6).  To prevail on this Motion, Mr. Plaza must show that there is no

genuine dispute as to a material fact that Mr. Heilbron acted willfully, that he acted maliciously,

and that his acts caused injury to Mr. Plaza or to Mr. Plaza's property.

And to succeed in his argument that Mr. Heilbron is collaterally estopped from contesting

these matters, Mr. Plaza must show that the issues determined by Mr. Heilbron's guilty plea in

Queens Criminal Court and by the Default Judgment in Queens Supreme Court are identical to the issues to be decided here, the issues were necessarily decided by the Queens Criminal Court in accepting the Plea and the Queens Supreme Court in entering the Default Judgment, and that the issues are decisive of the outcome in this action.

And even if Mr. Plaza meets this burden, Mr. Heilbron may nevertheless defeat this motion by showing that he did not have a full and fair opportunity to litigate these issues in those proceedings. Because of the significance of this piece of the picture, the Court first considers whether Mr. Heilbron has shown that he should not be barred from contesting these matters here because he lacked a full and fair opportunity to do so in the Queens Criminal Court and Queens Supreme Court proceedings.

### *Whether Mr. Heilbron Has Shown that He Did Not Have a Full and Fair Opportunity To Litigate in the State Court Actions*

The threshold consideration in determining whether collateral estoppel applies is whether the party against whom collateral estoppel is to be applied had a full and fair opportunity to litigate the issue in the prior action. This may be viewed as the starting point for this analysis because fairness is fundamental to this process, and the absence of a full and fair opportunity to litigate in the prior proceedings would undermine any determination that those proceedings should prevent a party from having their day in court in a later proceeding.

This criterion does not require that a trial occur, or even that the party against whom collateral estoppel is invoked appeared and defended the action. And the burden to establish the absence of a full and fair opportunity to litigate is on the party opposing collateral estoppel – in this case, Mr. Heilbron.

### *The Queens Criminal Court Action*

Mr. Heilbron argues that he did not have a full and fair opportunity to contest the charges in the Queens Criminal Court Action because "[he] pled guilty to assault in the third degree without a trial" and "there was no stipulation as to it being applied to future suits."  Bassias Aff. ¶ 12.  Mr. Heilbron also states that he entered his guilty plea only "because that is what [his] lawyer pressured [him] to."  Heilbron Aff. ¶ 12.  And he argues, "a trial would show that [Mr. Plaza] is not a credible witness."  Bassias Aff. ¶ 11.

Mr. Heilbron plainly advances these arguments in good faith.  But equally plainly, New York law accords preclusive effect to criminal pleas.  As one New York appellate court observed, "a criminal conviction, whether by plea or after trial, is conclusive proof of its underlying facts in a subsequent civil action and collaterally estops a party from relitigating the issue."  *Grayes v. DiStasio*, 166 A.D.2d 261, 262-63 (N.Y. App. Div. 1st Dep't 1990) (citing *Merchants Mut. Ins. Co. v. Arzillo,* 98 A.D.2d 495, 501-502 (N.Y. App. Div. 2d Dep't 1984)).

The outcome is no different in the context of a bankruptcy court dischargeability claim. As one bankruptcy court found:

> In the State of New York, a guilty plea is accorded the same preclusive effect as a conviction after a trial.  Although the elements of the crime have not been litigated, the issues have necessarily been judicially determined by the plea. *Furthermore, a defendant pleading guilty has had a full and fair opportunity to litigate his case, even though he has elected not to contest the accusations.*  He should not expect the courts to look behind convictions based on such pleas in order to relieve [him] from civil consequences which may follow.

*In re Greene*, 397 B.R. at 694 (emphasis added).  *See In re Soliman,* 539 B.R. at 700 (same).

And the court observed, "indeed, there are numerous cases holding that a guilty plea in a criminal prosecution satisfies the standards in § 523(a)(6)."  *In re Greene*, 397 B.R. at 694. (citing *Deere & Co. v. Dickerson (In re Dickerson),* 372 B.R. 827 (Bankr. N.D. Miss. 2007); *Gray v. Gray (In re Gray),* 322 B.R. 682 (Bankr. N.D. Ala. 2005);

*Roehrich),* 169 B.R. 941 (Bankr. D.N.D. 1994); *Blackman v. Gaebler (In re Gaebler),* 88 B.R. 62 (E.D. Pa. 1988)).

Accordingly, Mr. Plaza has not shown that he did not have a full and fair opportunity to litigate in the Queens Criminal Court Action.

*The Queens Supreme Court Action*

Mr. Heilbron argues that he did not have a full and fair opportunity to litigate in the Queens Supreme Court Action because that court entered a judgment against him on default. He points to the fact that there was no trial in the Queens Supreme Court Action, neither he nor Mr. Plaza testified, and there was "not a complete adjudication" of the merits of Mr. Plaza's claims. Bassias Aff. ¶ 12. He acknowledges that "the lawyers were unsuccessful in setting aside the judgment" in subsequent state court proceedings, including on grounds that he received inadequate notice and that he had a meritorious defense. Heilbron Aff. ¶ 20.

As noted above, the Second Circuit has found that New York's collateral estoppel rule gives preclusive effect to default judgments. *See, e.g., Evans*, 469 F.3d at 281 (according preclusive effect to a New York state court default judgment in a dischargeability action). But courts within the Circuit have questioned this determination. *See, e.g., In re Soliman*, 515 B.R. at 185 (stating that the conclusion in *Evans* "is questionable"); *In re Ferrandina*, 533 B.R. at 24 n.14 (stating that "not all courts agree that the Second Circuit properly stated New York's application of issue preclusion arising from a default judgment").

Here, the Court recognizes both the thoughtful analysis set forth in the Second Circuit's decision in *Evans*, and the well-founded concerns expressed thereafter by other courts within the Circuit. Taken together, these decisions point to the need to review the record in each case to determine whether, on the particular circumstances in the prior proceedings, a full and fair

30

opportunity to litigate was available to the party against whom collateral estoppel is asserted. A significant consideration in this review is whether the party to be barred had a second chance to assert his defense through a state court review of the default judgment.

And here, a review of the record shows that Mr. Heilbron had the opportunity to present his arguments concerning the adequacy of notice and the prospect of a meritorious defense in the OSC Request. On December 5, 2016, the Queens Supreme Court denied Mr. Heilbron's OSC Request, finding that he "does not set forth a reasonable excuse for his default in appearing," and similarly does not set forth "a meritorious defense to the action." Mot. Exh. H. Viewed another way, Mr. Heilbron had an opportunity to be heard both in the original action and in his OSC Request, and judgments – one on default, and one on his own application – were entered against him. It is not the role of this Court to revisit and overturn those determinations.

Accordingly, Mr. Plaza has not shown that he did not have a full and fair opportunity to litigate in the Queens Supreme Court Action.

### *Whether Mr. Plaza Has Established that There Is No Genuine Dispute as to a Material Fact that Mr. Heilbron Acted Willfully*

The first element of Mr. Plaza's Section 523(a)(6) claim is that Mr. Heilbron acted willfully with respect to the debt at issue. In the context of a Section 523(a)(6) claim, "willful" means "deliberate or intentional." *In re Stelluti*, 94 F.3d at 87. And as the Supreme Court has observed, "[a] willful disregard . . . which 'necessarily causes injury and is done intentionally, may be said to be done willfully and maliciously.'" *Kawaauhau*, 523 U.S. at 62-63 (quoting *Tinker*, 193 U.S. at 487).

To prevail on this Motion, Mr. Plaza must first show that there is no genuine dispute as to a material fact that Mr. Heilbron acted willfully.

Mr. Plaza invokes collateral estoppel and relies on the Plea and the Default Judgment to establish that Mr. Heilbron is precluded from contesting that he acted willfully.  He argues that Mr. Heilbron is collaterally estopped from contesting this issue on two distinct grounds – because it was addressed by his Plea in the Queens Criminal Court Action, and separately, because it was addressed by the Default Judgment in the Queens Supreme Court Action.

In order to show that Mr. Heilbron is collaterally estopped from contesting that he acted willfully, Mr. Plaza must show that the identical issue of Mr. Heilbron's willfulness was addressed, that it was necessarily decided, and that it is decisive in this action.  For either the Plea in the Queens Criminal Court Action or the Default Judgment in the Queens Supreme Court Action to serve as a bar, each of the above requirements must be met in the context of that proceeding.  The Court considers these requirements in turn.

<u>Whether Mr. Plaza Has Shown that There Is Identity of the Issues as to the Element of Willfulness.</u>  The starting point for considering whether collateral estoppel applies to bar relitigation of an issue is whether there is identify of the issues between the prior case and the present one.  As the New York Court of Appeals has stated, this calls for the court to determine whether there is "an identity between the particular matter in the second action and that presented in the first."  *D'Arata*, 76 N.Y.2d at 666.  And as the Supreme Court has observed, perfect identity of the issues is not the standard, and relitigation may be barred where "the issues . . . are in substance the same as those resolved" in the prior case.  *Montana*, 440 U.S. at 155.

The element of willfulness under Section 523(a)(6) requires proof of "a deliberate or intentional *injury,* not merely a deliberate or intentional *act* that leads to injury."  *Kawaauhau,* 523 U.S. at 61.  "Negligent or reckless conduct" is not sufficient to meet this standard.  *In re Orly,* 2016 WL 4376947, at *5.  Rather, for these purposes, "willful" means a deliberate and

intentional injury, or one that "a debtor believes . . . is substantially certain to result from his conduct." *In re Ferrandina,* 533 B.R. at 26.

### The Queens Criminal Court Action

Here, the record shows that in the Queens Criminal Court Action, Mr. Heilbron entered a plea of guilty to a single misdemeanor criminal charge of Assault in the Third Degree. During his plea allocution, Mr. Heilbron admitted that "on [June 29, 2008], about 10:30 in the evening at 78th Street and 21st Avenue in Queens, [he] knowingly assaulted another person and caused injury to [him]." Mot. Exh. B, Plea Hrg. Tr. at 2:15-19. He also stated that he was "pleading guilty of [his] own free will." Mot. Exh. B, Plea Hrg. Tr. at 2:12-14. And he acknowledged that his plea would "subject him to a criminal record." Mot. Exh. B, Plea Hrg. Tr. at 2:9-14

Mr. Heilbron points out that, as set forth in Penal Code Section 120.00, a person may be guilty of Assault in the Third Degree based on intentional, reckless, or criminally negligent conduct. And Mr. Heilbron correctly notes that the Certificate of Disposition does not specify whether his plea was to a charge under Penal Law Section 120.00(1), which addresses an assault made "with intent to cause physical injury," or 120.00(2), which addresses an assault that "recklessly causes physical injury," or 120.00(3), which addresses an assault made "with criminal negligence . . . by means of a deadly weapon or a dangerous instrument." N.Y. Penal Law §120.00.

But here, the language of the statute must be viewed in the context of Mr. Heilbron's criminal case, and in light of his statements upon entering his guilty plea. Mr. Heilbron acknowledged that he "knowingly assaulted another person and caused injury to that person." Mot. Exh. B, Plea Hrg. Tr. at 2:15-20. He also acknowledged the date, time, and circumstances of the altercation, confirmed that he was pleading guilty "of his own free will." Mot. Exh. B,

Plea Hrg. Tr. at 2:6-20.  And in these proceedings, he was represented by counsel.  It is hard to reconcile Mr. Heilbron's statements with the terms of Penal Law Section 120.00(2), which concerns reckless conduct, or with the terms of Penal Law Section 120.00(3), which requires the use of a "deadly weapon" or "dangerous instrument."

Measured against the Supreme Court's statement that "'willful' in § 523(a)(6) means 'deliberate or intentional,'" the record leaves no doubt that there is an identity of the issues between the intent component of Mr. Heilbron's guilty plea and the willfulness element of this Section 523(a)(6) claim.  *Kawaauhau*, 523 U.S. at 61, n.3 (internal citations omitted).

Accordingly, Mr. Plaza has shown that based on Mr. Heilbron's guilty plea in the Queens Criminal Court Action, there is identity of the issues with respect to the first element of his Section 523(a)(6) claim, whether Mr. Heilbron acted willfully.

*The Queens Supreme Court Action*

Here, the record shows that in the Queens Supreme Court Action, the court entered a judgment on default against Mr. Heilbron on two causes of action, for the torts of assault and battery.  The elements of each of these claims are well settled under New York law.  As for the elements of an assault claim, New York courts hold that "[t]o sustain a cause of action to recover damages for assault, there must be proof of physical conduct placing the plaintiff in imminent apprehension of harmful contact."  *Butler v. Magnet Sports & Entertainment Lounge, Inc*., 135 A.D.3d 680, 681 (N.Y. App. Div. 2d Dep't 2016) (internal quotations omitted).  And as for the elements of a battery claim, New York courts state that "'[t]he elements of a cause of action [to recover damages] for battery are bodily contact, made with intent, and offensive in nature.'" *Fugazy v. Corbetta*, 34 A.D.3d 728, 729 (N.Y. App. Div. 2d Dep't 2006) (quoting *Tillman v. Nordon,* 4 A.D.3d 467, 468 (N.Y. App. Div. 2d Dep't 2004)).

As these cases show, the intent to cause injury – as opposed to the intent to threaten or offend, or to make bodily contact – is not required to establish a civil claim for assault or for battery under New York law.  By contrast, "willful" conduct for purposes of Section 523(a)(6) requires such intent.  That is, here, as in *In re Soliman*, "the state law civil assault and battery cause of action did not require [the plaintiff] to establish that [the defendant] intended to injure [him] – a required element of the denial of discharge cause of action" under Section 523(a)(6). *In re Soliman*, 515 B.R. at 183.

Accordingly, Mr. Plaza has not shown that based on the Default Judgment in the Queens Supreme Court Action, there is identity of the issues with respect to the first element of his Section 523(a)(6) claim, whether Mr. Heilbron acted willfully.

<u>Whether Mr. Plaza Has Shown that the Issue of Willfulness Was Necessarily Decided.</u> The next requirement in determining whether collateral estoppel applies to bar relitigation of an issue is whether the issue was necessarily decided in the prior case.

*The Queens Criminal Court Action*

Here, as described above, that Mr. Heilbron pleaded guilty to a criminal charge of Assault in the Third Degree.  As noted above, he did so in terms that show an identity of the issues with the willfulness element of Mr. Plaza's Section 523(a)(6) claim, including by acknowledging in response to questions from the court that he "knowingly assaulted another person and caused injury to [him]."  Mot. Exh. B. Plea Hrg. Tr. at 2:15-20.  And in response to the court's inquiry, the prosecution confirmed that Mr. Heilbron's plea was "acceptable to the People."  Mot. Exh. B. Plea Hrg. Tr. at 2:21-22.  That is, the entry of the Plea necessarily required the determination of the nature of Mr. Heilbron's conduct, and the intent component of Mr. Heilbron's guilty plea was necessary to the acceptance of that Plea.

Accordingly, Mr. Plaza has shown that based on Mr. Heilbron's guilty plea in the Queens Criminal Court Action, the issue of whether Mr. Heilbron acted willfully was necessarily decided in that action.

*The Queens Supreme Court Action*

As described above, the Queens Supreme Court entered a judgment on default against Mr. Heilbron on two tort causes of action, assault and battery.  And for each of these claims, the intent to cause injury – as opposed to the intent to threaten or offend, or to make bodily contact – is not required to establish liability under New York law.

Accordingly, and for substantially the same reasons, Mr. Plaza has not shown that based on the Default Judgment in the Queens Supreme Court Action, the issue of whether Mr. Heilbron acted willfully was necessarily decided in that action.

Whether Mr. Plaza Has Shown that the Issue of Willfulness Is Decisive in this Action. The final requirement for the application of New York's collateral estoppel rule is that the issue is decisive in the present action.  Addressing this requirement calls for the Court to consider the elements of the claim here, rather than the matters before the courts in the Queens Criminal Court Action and the Queens Supreme Court Action.

Here, it is plain that the issue of willfulness is decisive in this action, because it is one of the elements of Mr. Plaza's Section 523(a)(6) claim.  As the Bankruptcy Code states, in order to prevail on a claim that a debt is nondischargeable under this section, the debt must result from "a *willful* and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6).  Indeed, the question of the defendant's intent is often the cornerstone to a determination of dischargeability.

Accordingly, Mr. Plaza has shown that the issue of willfulness is decisive in this action.

*              *              *

In sum, Mr. Plaza has shown that the requirements of collateral estoppel are met with respect to the issue of whether Mr. Heilbron acted willfully in the Queens Criminal Court Action, because he has shown that there is identity of the issues, that the determination of the issue was necessary to support Mr. Heilbron's Plea, and that the issue is decisive in this action. And Mr. Heilbron has not shown that he did not have a full and fair opportunity to litigate in that action.

For these reasons, and based on the entire record, Mr. Plaza has established that there is no genuine dispute as to a material fact with respect to the first element of his Section 523(a)(6) claim, that Mr. Heilbron acted willfully with respect to the debt at issue.

_Whether Mr. Plaza Has Established that There is No Genuine Dispute as to a Material Fact that Mr. Heilbron Acted Maliciously_

The second element of Mr. Plaza's Section 523(a)(6) claim is that Mr. Heilbron acted maliciously. And in this context, malicious "means wrongful and without just cause or excuse, even in the absence of personal hatred, spite, or ill-will." _In re Stelluti_, 94 F.3d at 87. Malice may be constructive or implied, and "[i]mplied malice may be demonstrated by the acts and conduct of the debtor in the context of [the] surrounding circumstances." _In re Stelluti_, 94 F.3d at 88 (quoting _First Nat'l Bank of Maryland v. Stanley (In re Stanley),_ 66 F.3d 664, 668 (4th Cir. 1995)).

To prevail on this Motion, Mr. Plaza must show that there is no genuine dispute as to a material fact that Mr. Heilbron acted maliciously.

Here again, and for substantially the same reasons, Mr. Plaza invokes collateral estoppel and looks to the Plea and the Default Judgment to establish that Mr. Heilbron is precluded from contesting that he acted maliciously. He argues that this element is conclusively established

because it is addressed by Mr. Heilbron's Plea in the Queens Criminal Court Action and by the Default Judgment in the Queens Supreme Court Action.

In order to show that Mr. Heilbron is collaterally estopped from contesting that he acted maliciously, Mr. Plaza must show that the identical issue was addressed, that it was necessarily decided, and that it is decisive in this action. And each of these elements must be met in the context of either the Plea in the Queens Criminal Court Action or the Default Judgment in the Queens Supreme Court Action. The Court considers these requirements in turn.

Whether Mr. Plaza Has Shown that There Is Identity of the Issues as to the Element of Maliciousness. Identity of the issues is, as noted above, the starting point for determining whether collateral estoppel applies to bar a party from contesting an issue. Courts agree that perfect identity is not required, and substantial identity will suffice. As the Supreme Court observed, relitigation will be barred where "the issues presented by this litigation are in substance the same as those resolved" in the prior case. *Montana*, 440 U.S. at 155.

In the context of a Section 523(a)(6) claim, malice means "'wrongful and without just cause or excuse.'" *Ball*, 451 F.3d at 69 (quoting *In re Stelluti*, 94 F.3d at 87). This requires significantly more than a breach of contract or a failure to comply with a known duty. As one bankruptcy court found, "the element of malice may be found . . . upon a finding of aggravated, socially reprehensible conduct." *Bundy Am. Corp. v. Blankfort (In re Blankfort),* 217 B.R. 138, 144 (Bankr. S.D.N.Y. 1998). And as that court observed, in those cases where the record shows that "persons of honest character could have committed the acts or mistakes which led to legal liability," the creditor's Section 523(a)(6) claim will not succeed and the debtor's obligation will be discharged. *Id*. For these same reasons, the question of malice is a fact-specific

determination, and a court's decision should be informed by "the totality of the circumstances." *In re Bressler,* 387 B.R. at 455.

*The Queens Criminal Court Action*

Here, as noted above, the record shows that in the Queens Criminal Court Action, Mr. Heilbron pleaded guilty to one misdemeanor criminal charge of Assault in the Third Degree. In doing so, he admitted that "on [June 29, 2008], about 10:30 in the evening at 78th Street and 21st Avenue in Queens, [he] knowingly assaulted another person and caused injury to [him]." Mot. Exh. B, Plea Hrg. Tr. at 2:15-20. He stated that he was "pleading guilty of [his] own free will," and he acknowledged that his plea would "subject him to a criminal record." Mot. Exh. B, Plea Hrg. Tr. at 2:9-14.

As also noted above, Mr. Heilbron argues that, as set forth in Penal Code Section 120.00, a person may be guilty of Assault in the Third Degree based on intentional, reckless, or criminally negligent conduct. And the Certificate of Disposition does not specify whether Mr. Heilbron's plea was to a charge under Penal Law Section 120.00(1), which addresses an assault made "with intent to cause physical injury," or 120.00(2), which addresses an assault that "recklessly causes physical injury," or 120.00(3), which addresses an assault made "with criminal negligence . . . by means of a deadly weapon or a dangerous instrument." N.Y. Penal Law §120.00.

But as with the question of willfulness, here, the language of the statute must be viewed in the context of Mr. Heilbron's criminal case, and in light of his statements upon entering his guilty plea. Mr. Heilbron acknowledged that he "knowingly assaulted another person and caused injury to that person." Mot. Exh. B, Plea Hrg. Tr. at 2:15-20. He also acknowledged the date, time, and circumstances of the altercation, confirmed that he was pleading guilty "of his own

free will," and he was represented by counsel. Mot. Exh. B, Plea Hrg. Tr. at 2:6-20. And here too, it is hard to reconcile Mr. Heilbron's statements with the terms of Penal Law Section 120.00(2), which concerns reckless conduct, or with the terms of Penal Law Section 120.00(3), which requires the use of a "deadly weapon" or "dangerous instrument." N.Y. Penal Law §120.00.

That is, both Mr. Heilbron's statements and the substance of the offense to which he entered his guilty plea point to the conclusion that his conduct was found to be "wrongful and without just cause or excuse," and to an identity of the issues between the intent component of Mr. Heilbron's guilty plea and the maliciousness element of this Section 523(a)(6) claim. *Ball*, 451 F.3d at 69 (quoting *In re Stelutti*, 94 F.3d at 87).

Accordingly, Mr. Plaza has shown that based on Mr. Heilbron's guilty plea in the Queens Criminal Court Action, there is identity of the issues with respect to the second element of his Section 523(a)(6) claim, whether Mr. Heilbron acted maliciously.

*The Queens Supreme Court Action*

Here, as noted above, the record shows that in the Queens Supreme Court Action, the court entered a judgment on default against Mr. Heilbron on two causes of action, for the torts of assault and battery. The assault claim requires the determination that Mr. Heilbron's physical conduct caused Mr. Plaza to be in imminent apprehension of harmful contact. And the battery claim requires the finding that Mr. Heilbron made bodily contact with Mr. Plaza that was intentional and offensive.

The intent to cause injury – as opposed to the intent to threaten or offend, or to make bodily contact – is not required to establish a civil claim for assault or battery under New York law. As a consequence, "malicious" conduct for purposes of Section 523(a)(6), like "willful"

conduct, requires more than the intent that is required for these civil torts. And civil liability for the torts of assault and battery does not necessarily require the kind of "aggravated, socially reprehensible conduct" identified by the court in *In re Blankfort*.

Accordingly, Mr. Plaza has not shown that based on the Default Judgment in the Queens Supreme Court Action, there is identity of the issues with respect to the second element of his Section 523(a)(6) claim, whether Mr. Heilbron acted maliciously.

<u>Whether Mr. Plaza Has Shown that the Issue of Maliciousness Was Necessarily Decided.</u> The next consideration in determining whether collateral estoppel applies is whether the issue was necessarily decided in the prior case.

*The Queens Criminal Court Action*

Here, as noted above, the record shows that Mr. Heilbron pleaded guilty to a misdemeanor criminal charge of Assault in the Third Degree. As also noted above, he did so in terms that confirm an identity of the issues with the maliciousness element of Mr. Plaza's Section 523(a)(6) claim, including by acknowledging in response to questions from the court that he "knowingly assaulted another person and caused injury to [him]." Mot. Exh. B, Plea Hrg. Tr. at 2:15-20. That is, in entering his plea, Mr. Heilbron acknowledged, in substance, that his conduct was "wrongful and without just cause or excuse, even in the absence of personal hatred, spite, or ill-will." *In re Stelluti,* 94 F.3d at 87. The prosecution confirmed that Mr. Heilbron's plea was "acceptable to the People," and the court accepted the plea. Mot. Exh. B, Plea Hrg. Tr. at 2:21-22. Both the elements of the criminal charge to which Mr. Heilbron entered his plea, and the record of that hearing, show that the question of Mr. Heilbron's intent was necessary to the court's determination to accept his plea.

41

Accordingly, Mr. Plaza has shown that based on Mr. Heilbron's guilty plea in the Queens Criminal Court Action, the issue of Mr. Heilbron acted maliciously was necessarily decided in that action.

*The Queens Supreme Court Action*

As described above, the Queens Supreme Court entered a judgment on default against Mr. Heilbron on two tort causes of action, assault and battery. These claims require the intent to threaten or offend, or to make bodily contact. *Butler*, 135 A.D.3d at 680; *Fugazy*, 34 A.D.3d at 729. But as also noted above, "malicious" conduct for purposes of Section 523(a)(6), like "willful" conduct, requires more than the intent that is required for these civil torts. And civil liability for the torts of assault and battery does not necessarily require the kind of "aggravated, socially reprehensible conduct" identified by the court in *In re Blankfort*.

Accordingly, Mr. Plaza has not shown that based on the Default Judgment in the Queens Supreme Court Action, the issue of whether Mr. Heilbron acted maliciously was necessarily decided in that action.

<u>Whether Mr. Plaza Has Shown that the Issue of Maliciousness Is Decisive in this Action.</u> The final requirement for the application of New York's collateral estoppel rule is that the issue is decisive in the present action. As with willfulness, addressing this requirement calls for the Court to consider the elements of the claim here, rather than the matters before the courts in the Queens Criminal Court Action and the Queens Supreme Court Action.

Here, it is plain that the issue of maliciousness is decisive in this action, because it is one of the elements of Mr. Plaza's Section 523(a)(6) claim. As the Bankruptcy Code states, in order to prevail on a claim that a debt is nondischargeable under this section, the debt must result from "a willful and *malicious* injury by the debtor to another entity or to the property of another

entity." 11 U.S.C. § 523(a)(6).  As with willfulness, matters concerning the defendant's intent are central to the determination of dischargeability.

Accordingly, Mr. Plaza has shown that the issue of maliciousness is decisive in this action.

*          *          *

In sum, Mr. Plaza has shown that the requirements of collateral estoppel are met with respect to the issue of whether Mr. Heilbron acted maliciously in the Queens Criminal Court Action, because he has shown that there is identity of the issues, that the determination of the issue was necessary to support Mr. Heilbron's Plea, and that the issue is decisive in this action. And Mr. Heilbron has not shown that he did not have a full and fair opportunity to litigate in that action.

For these reasons, and based on the entire record, Mr. Plaza has established that there is no genuine dispute as to a material fact with respect to the second element of his Section 523(a)(6) claim, that Mr. Heilbron acted maliciously with respect to the debt at issue.

### _Whether Mr. Plaza Has Established that There Is No Genuine Dispute as to a Material Fact that Mr. Heilbron's Acts Injured Him or His Property_

The third element of Mr. Plaza's Section 523(a)(6) claim is that Mr. Heilbron caused injury to him or his property.  11 U.S.C. § 523(a)(6).  As noted above, the Bankruptcy Code does not define the term "injury."  But both a review of Second Circuit authority and common sense confirm that "injury" for these purposes includes physical harm to a person.  _See, e.g., In re Soliman,_ 539 B.R. at 700 (court stated that plaintiff clearly suffered injury after being bitten in the nose by debtor, requiring stiches); _In re Greene,_ 397 B.R. at 695 (court found injury where debtor stabbed plaintiff in the abdomen with a knife).

To prevail on this Motion, Mr. Plaza must show that there is no genuine dispute as to a material fact that Mr. Heilbron caused such an injury.

Here again, Mr. Heilbron invokes the doctrine of collateral estoppel and looks to the Plea and the Default Judgment to establish that Mr. Heilbron cannot contest that he caused an injury to Mr. Heilbron. He argues that this element is conclusively established by the terms of Mr. Heilbron's Plea in the Queens Criminal Court Action and by the Default Judgment in the Queens Supreme Court Action.

And as with the prior elements of Mr. Plaza's claim, in order to show that Mr. Heilbron should be collaterally estopped from contesting this element, Mr. Plaza must show that the identical issue was addressed, that it was necessarily decided, and that it is decisive in this action. And each of these elements must be met in the context of either the Plea in the Queens Criminal Court Action or the Default Judgment in the Queens Supreme Court Action. The Court considers these requirements in turn.

Whether Mr. Plaza Has Shown that There Is Identity of the Issues as to the Element of Injury. Collateral estoppel requires identity of the issues between the prior case and the present one, because a party should not be required to relitigate a matter that has been necessarily determined by another court, following a full and fair opportunity to litigate.

Section 523(a)(6) requires a plaintiff to establish that the debt at issue arises from an injury to the plaintiff or the plaintiff's property. And "injury," for these purposes, plainly includes physical harm to a person.

*The Queens Criminal Court Action*

Here, as discussed above, the record shows that in the Queens Criminal Court Action, Mr. Heilbron pleaded guilty to one misdemeanor criminal charge of Assault in the Third Degree.

In entering his plea, he admitted that "[o]n or about [June 29, 2008], about 10:30 in the evening at 78th Street and 21st Avenue in Queens, [he] knowingly assaulted [Mr. Plaza] and caused injury to [him]."  Mot. Exh. B, Plea Hrg. Tr. at 2:15-20.

Accordingly, Mr. Plaza has shown that based on Mr. Heilbron's guilty plea in the Queens Criminal Court Action, there is identity of the issues with respect to the third element of his Section 523(a)(6) claim, whether Mr. Heilbron caused injury to him.

*The Queens Supreme Court Action*

Here, as noted above, the record shows that in the Queens Supreme Court Action, the court entered a judgment on default against Mr. Heilbron on two causes of action, for the torts of assault and battery.  As discussed above, a finding of battery requires that the defendant intentionally and offensively touch the plaintiff, while a finding of assault requires that the defendant intentionally perform physical conduct that places the plaintiff in fear of imminent harmful contact.  And following an inquest and trial on damages, the court awarded Mr. Plaza damages of $75,000 for his pain and suffering, and damages of $50,000 for his future pain and suffering, among other amounts.

While not every claim for assault and battery requires a physical injury, here it is plain from the record that the court's judgment and award of damages – including damages for pain and suffering – was grounded in the determination that Mr. Plaza was injured.  By entering a default judgment on Mr. Plaza's assault claim against Mr. Heilbron, the court necessarily found that Mr. Heilbron's physical conduct placed Mr. Plaza in imminent fear of harmful contact.  By entering a default judgment on Mr. Plaza's battery claim against Mr. Heilbron, the court necessarily found that Mr. Heilbron intentionally touched Mr. Plaza, and that the touching was

offensive. And by awarding damages for present and future pain and suffering, the court recognized that Mr. Plaza was injured.

Accordingly, Mr. Plaza has shown that based on the Default Judgment in the Queens Supreme Court Action, there is identity of the issues with respect to the third element of his Section 523(a)(6) claim, whether Mr. Heilbron injured Mr. Plaza or his property.

Whether Mr. Plaza Has Shown that the Issue of Whether Mr. Heilbron Injured Mr. Plaza Was Necessarily Decided. The next consideration in determining whether collateral estoppel applies is whether the issue was necessarily decided in the prior case.

*The Queens Criminal Court Action*

Here, as noted above, the record shows that Mr. Heilbron pleaded guilty to a misdemeanor criminal charge of Assault in the Third Degree. And he did so in terms that confirm an identity of the issues with the injury element of Mr. Plaza's Section 523(a)(6) claim, including by admitting that he "knowingly assaulted another person and caused injury to [him]." Mot. Exh. B, Plea Hrg. Tr. at 2:15-20. As with the element of maliciousness, here both the elements of the criminal charge to which Mr. Heilbron entered his plea, and the record of that hearing, show that the question of whether Mr. Heilbron injured Mr. Plaza was necessary to the court's determination to accept his plea.

Accordingly, Mr. Plaza has shown that based on Mr. Heilbron's guilty plea in the Queens Criminal Court Action, the issue of whether Mr. Heilbron injured Mr. Plaza was necessarily decided in that action.

*The Queens Supreme Court Action*

Here, as noted above, the record shows that in the Queens Supreme Court Action, the court entered a judgment on default against Mr. Heilbron on two causes of action, for the torts of

46

assault and battery.  Following an inquest and trial on damages, the court awarded Mr. Plaza damages of $75,000 for his pain and suffering, and damages of $50,000 for his future pain and suffering, among other amounts.  Just as this record establishes that the court's judgment and award of damages included the determination that Mr. Plaza was injured for purposes of establishing identity of the issues, it also demonstrates that the court's conclusions were necessarily predicated on the determination that Mr. Plaza was injured.

Accordingly, Mr. Plaza has shown that based on the Default Judgment in the Queens Supreme Court Action, the issue of whether Mr. Heilbron injured Mr. Plaza was necessarily decided in that action.

Whether Mr. Plaza Has Shown that the Issue of Injury Is Decisive in this Action.  The final requirement for the application of collateral estoppel under New York law is that the issue is decisive in the present action.  As with the other elements of this claim, addressing this requirement calls for the Court to consider the elements of the claim here, rather than the matters before the courts in the Queens Criminal Court Action and the Queens Supreme Court Action.

And here, as with those other elements, the issue of injury is decisive, because it is one of the elements of Mr. Plaza's Section 523(a)(6) claim.  As the Bankruptcy Code states, in order to prevail on a claim that a debt is nondischargeable under this section, the debt must result from "a willful and malicious *injury* by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6).

Accordingly, Mr. Plaza has shown that the issue of whether Mr. Heilbron caused injury to Mr. Plaza is decisive in this action.

*          *          *

In sum, Mr. Plaza has shown that the requirements of collateral estoppel are met with respect to the issue of whether Mr. Heilbron caused an injury to him or to his property in the Queens Criminal Court Action, and separately, in the Queens Supreme Court Action, because he has shown that there is identity of the issues, that the determination of the issue was necessary to support Mr. Heilbron's Plea, and that the issue is decisive in this action.  And Mr. Heilbron has not shown that he did not have a full and fair opportunity to litigate in those actions.

For these reasons, and based on the entire record, Mr. Plaza has established that there is no genuine dispute as to a material fact with respect to the third element of his Section 523(a)(6) claim, that Mr. Heilbron caused injury to him.

## Conclusion

The question posed by this Motion is whether, based on the proceedings and the judgments entered in the Queens Criminal Court Action and the Queens Supreme Court Action, Mr. Plaza has established that he is entitled to judgment here that the debt owed to him by Mr. Heilbron is nondischargeable here in Mr. Heilbron's Chapter 7 bankruptcy case.  That debt arose from an altercation and Mr. Heilbron's guilty plea to a misdemeanor criminal charge more than eleven years ago and a default judgment in a civil tort action some ten years ago.

In advancing his argument for summary judgment, Mr. Plaza argues that, in substance, that long road should end here, and based on those prior proceedings, Mr. Heilbron should be estopped from contesting each of the elements of this nondischargeability claim.  This requires a careful analysis of each of the elements of Mr. Plaza's Section 523(a)(6) claim, and each of the criteria of New York's collateral estoppel rule.  It also requires careful consideration of whether, in those prior proceedings, Mr. Heilbron had a full and fair opportunity to be heard.

And here, that review leads to the conclusion that Mr. Plaza has met his burden to show that Mr. Heilbron is collaterally estopped from contesting each of the elements of this claim, and accordingly, that there is no genuine dispute as to a material fact with respect to those elements. And Mr. Heilbron has not met his burden to show that he did not have a full and fair opportunity to contest these matters in the Queens Criminal Court Action and the Queens Supreme Court Action.

For these reasons, and based on the entire record, the Motion for Summary Judgment is granted. An order in accordance with this Memorandum Decision shall be entered simultaneously herewith.



**Dated: Brooklyn, New York**
**January 15, 2020**

_____
**Elizabeth S. Stong**
**United States Bankruptcy Judge**